IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01839-WYD-KLM

MIKEAL GLENN STINE and
RAYMOND OESCHLE,

    Plaintiff,

v.

HARLEY LAPPIN, Director B.O.P.,
MICHAEL NALLEY, Regional Director B.O.P., and
RON WILEY, Warden ADX Supermax,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on *pro se* Plaintiffs' **Motion for Evidentiary Hearing and Injunctive Order** [Docket No. 71; Filed March 18, 2008] and Plaintiffs' **Amended Motion for Evidentiary Hearing; Protective Order; and Injunctive Order. "Expedited Consideration Requested with Good Cause"** [Docket No. 93; Filed April 4, 2008] (collectively, the "Motions"). Both Motions request that the Court hold an emergency hearing and enter a preliminary injunction due to the alleged actions of several prison officials which Plaintiffs contend violated their right of access to the courts.

    Plaintiffs are prisoners at the United States Penitentiary, ADMAX, in Florence, Colorado ("ADX"). Plaintiffs are proceeding *pro se.* As such, the Court must construe their pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not the *pro se* party's advocate and must nevertheless deny a motion that is based on vague or conclusory allegations.

*Hall*, 935 F.3d at 1110.

The Court has reviewed the Motions, Defendants' Response [Docket No. 127; Filed May 30, 2008],[1] the case file, and applicable case law and is sufficiently advised in the premises. **The Court finds that a hearing will not materially assist in resolving the Motions.** For the reasons provided below, I respectfully recommend that the Motions [Docket Nos. 71 & 93] be **DENIED**.

By way of giving context to the Motions, the Court provides the following procedural history. On August 31, 2007, Plaintiffs filed a complaint asserting *Bivens* claims against the above-named Defendants [Docket No. 3]. They claim that Defendants violated their due process rights by transferring them to ADX without notice and a hearing. They also claim that their continued confinement at ADX constitutes cruel and unusual punishment. Including the present Motions, to date Plaintiffs have filed nine motions seeking injunctive relief [Docket Nos. 6, 12, 19, 21, 49, 66, 71, 78, & 93]. Their first four motions, which alleged that Plaintiffs' current housing assignment places them in imminent danger of serious injury, were denied on November 2, 2007 [Docket No. 36].[2] After resolution of the present Motions, three additional motions requesting injunctive relief will remain pending [Docket Nos. 49, 66, & 78] (alleging that Plaintiffs are in danger of being harmed by the

---

[1] The Court extended the time for Defendants to respond to the Motions to May 30, 2008 [Docket No. 112]. The Court also declined to consider a reply [Docket No. 95]. The Motions are now fully briefed.

[2] Although the motions were denied on their merits, the District Court warned Plaintiffs that their continued filing of expedited motions seeking injunctive relief were viewed as attempts to inundate the court with baseless filings. *Order* [#36] at 5. Since that Order was docketed, in apparent disregard of the District Court's warning, Plaintiffs have filed five additional expedited requests for injunctive relief.

"Aryan Brotherhood, Mexican mafia 'EME,' or Gan[g]ster Deciplies [sic]" and requesting an injunction to prohibit Defendants from moving Plaintiffs to a less-restrictive housing unit or to require Defendants to place Plaintiffs in special housing).

In the present Motions, Plaintiffs contend that (1) nonparty ADX staff are preventing them from communicating with each other and securing affidavits from other inmates; (2) nonparty ADX staff are interfering with Plaintiffs' communications with two lawyers; and (3) nonparty ADX staff confiscated letters they have written to Senator John Kerry. Although each claim relates to actions allegedly taken by individuals not a party to this lawsuit, Plaintiffs contend that the actions were taken at the behest of Defendant Wiley, ADX Warden.[3]

As an initial matter, Defendants argue that the Motions should be denied because these claims are not contained in Plaintiffs' complaint and because Plaintiffs failed to exhaust their administrative remedies. *Response* [#127] at 3-7. The Court rejects both preliminary arguments. First, Plaintiffs' Motions essentially assert that they are being denied access to the Courts. *Motion* [#71] at 3-5; *Motion* [#93] at 4. Plaintiffs may assert this claim at any time during their litigation, regardless of whether such a claim is contained in their complaint. *See Ayyad v. Gonzales*, No. 05-cv-02342-WYD-MJW, 2008 WL 203420, at *3 (D. Colo. Jan. 17, 2008) (unpublished decision). Second, while exhaustion requirements imposed by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), may

---

[3] Plaintiffs' attempt to link the conduct of nonparty ADX officials to Defendant Wiley is tenuous at best. Plaintiffs have frequently been denied relief sought for alleged injuries inflicted by nonparties. *See, e.g.*, *Order* [#55] at 2. Their allegations that certain conduct was prompted by Defendant Wiley have also met with disapproval. *See, e.g.*, *Order* [#83] at 2. Because the relief Plaintiffs seek here could theoretically be provided by Defendants, the Court elects to consider the Motions on the merits.

apply here, Plaintiffs contend (1) that they exhausted their administrative remedies, and (2) that they were prevented from adequately filing grievances, *Motion* [#71] at 2, 5. Although these two statements are inconsistent, the Court is inclined to resolve the Motions on their merits.[4]

Turning to the merits of the Motions, Plaintiffs' request for injunctive relief is unspecified and, accordingly, unclear. Plaintiffs ask the Court to "issue injunctive order the Court deems necessary." *Motion* [#93] at 4. They also ask the Court "to prevent additional injury and need for further intervention and sanctions as Defendants are out of control."[5] *Id.* at 5. I find that Plaintiffs are unable to meet their burden to show that a preliminary injunction is necessary. A preliminary injunction is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury

---

[4] The Court notes that Plaintiffs have frequently asserted that they were deprived the necessary forms to adequately exhaust their administrative remedies in this and other cases. *See, e.g.*, Case No. 07-cv-00799-WYD-KLM, *Order* [#166] at 3-4. For the most part, these allegations have not been supported by evidence and have been rejected. While the Court is suspicious of Plaintiffs' contentions that they were prevented from exhausting their grievances herein – especially considering several grievance forms attached by Plaintiffs regarding their inability to communicate with each other, *Motion* [#93] at 11-14 – the Court is persuaded that doubt remains about the issue of exhaustion and that justice would be served by resolving Plaintiffs' claims on the merits. *See generally Stine v. Wiley*, 06-cv-01205-WYD-PAC, 2007 WL 201251, at **2-3 (D. Colo. Jan. 24, 2007) (unpublished decision) (noting that Plaintiff Stine likely failed to exhaust administrative remedies, but reaching merits of preliminary injunction motion).

[5] Plaintiffs apparently forget that this Court handles multiple cases filed by ADX prisoners against ADX officials. Based on both the quantity and quality of the litigation involving ADX prisoners and an overall comparison of other ADX prisoner litigation to this case, the Court is in an excellent position to determine which parties, if any, are "out of control." In this case, all signs point to Plaintiffs, not Defendants. *See supra* notes 2 & 3; *infra* notes 6 & 7.

outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.*

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.

*Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Plaintiffs appear to seek a preliminary injunction that would require Defendants to act in a way that (Plaintiffs allege) is contrary to their prior practices, i.e., to let Plaintiffs freely converse with each other and other inmates and to change Defendants' policies regarding incoming and outgoing mail relating to attorneys and other public officials. Given the relief Plaintiffs appear to seek, the relief sought would alter the status quo rather than preserve it and would also require Defendants to act. For these reasons, the injunctive relief sought by Plaintiffs "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Id.* at 1259, 1261.

5

First, Plaintiffs must show that they will suffer irreparable injury if their request for injunctive relief is denied. *Id.* at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (citation omitted).

Here, Plaintiffs assert that nonparty ADX staff members, at the alleged behest of Defendant Wiley, have deprived them of their ability to communicate with each other, other inmates, attorneys Daniel Manville and Donald Knight, and Senator John Kerry. Taking each claim separately, the Court notes that throughout Plaintiffs' lengthy litigation history, the Court has repeatedly denied relief relating to their assertions that they are prevented from communicating with each other while incarcerated at ADX. On November 2, 2007, Senior District Court Judge Zita L. Weinshienk denied several earlier preliminary injunction motions based, in part, on the same allegation. *Order* [#36] at 5. Specifically, Judge Weinshienk noted that Plaintiffs chose to litigate their claims in one case. To the extent that they feel they are being prohibited from communicating with each other, Judge Weinshienk noted that "they may seek to prosecute their individual claims in a separate lawsuit." *Id.* In a later Order, Judge Weinshienk also noted that Plaintiffs do "not have a constitutional right to prosecute this action with" each other. *Order* [#39] at 1. Given that Plaintiffs chose to bring this action together knowing the difficulties they would face regarding their ability to communicate, the Court cannot find that they are suffering an injury that could not be

6

cured by proceeding separately. *See generally Shaw v. Murphy*, 532 U.S. 223, 228-31 (2001) (noting there is no special protection for legal communications between inmates). Indeed, although Plaintiffs make a conclusory allegation that they are being prevented from filing motions in this case, *Motion* [#71] at 3, they do not substantiate this allegation or point to any specific pleading that they were prevented from filing. Moreover, the number of motions filed by Plaintiffs in this case alone belies their contention that they are prejudiced by the alleged difficulties they are experiencing in communicating with each other.[6] As such, not only does Plaintiffs' vague, unsubstantiated, and conclusory claim fail to demonstrate harm that exceeds more than "merely serious or substantial" harm, they fail to offer evidence of any harm.

To the extent that Plaintiffs also claim that they are being injured by their inability to question and secure documentation from other inmates, the Tenth Circuit has specifically passed judgment on Plaintiff Stine's allegations that he was being prevented from communicating with other inmates, noting that "regulating inmate-to-inmate communication passes constitutional muster as long as it is 'reasonably related to legitimate penological interests.'" *Stine v. Collins*, No. 08-1078, 2008 WL 2275921, at *1 (10th Cir. June 4, 2008) (unpublished decision) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Here, Defendants have a recognized penological interest relating to safety which justifies their control of communications between inmates. *See Shaw*, 532 U.S. at 229-31; *Turner*, 482 U.S. 89-90. Even if that were not the case, in this particular instance, the Court cannot

---

[6] While inmate co-plaintiffs are permitted to communicate with each other, this right is not unfettered and is subject to the review and approval of the inmates' unit manager. *See* 28 C.F.R. § 540.17. The number of motions filed by Plaintiffs in this case (23 to date) also contradicts their contention that Defendants are prohibiting Plaintiffs' communications outright.

7

identify an injury that these Plaintiffs have suffered as a result of their alleged inability to communicate with other inmates. Defendants have only recently entered their appearance in this case, and the deadline for filing their answer has not yet passed. Moreover, no preliminary scheduling conference has occurred and discovery parameters have not been set. Indeed, the time for taking discovery has not yet begun. The present case is about Defendants' alleged unconstitutional incarceration of Plaintiffs at ADX. The Court cannot deduce, nor do Plaintiffs articulate, what information other inmates could possess that would advance the present case. As such, not only does Plaintiffs' vague, unsubstantiated, and conclusory claim fail to demonstrate harm that exceeds more than "merely serious or substantial" harm, they again fail to demonstrate any harm. *See Stine*, 2008 WL 2275921, at *1 (rejecting petition for mandamus based on Plaintiff Stine's failure to show any prejudice from his inability to communicate with other inmates)*.*

To the extent that Plaintiffs claim that they are suffering irreparable injury due to Defendants' alleged interception of communications from attorneys, Plaintiffs fail to substantiate their claim. As a preliminary matter, neither attorney Donald Knight nor Daniel Manville represents Plaintiffs in this or any other action. *Response* [#127] at 12. Plaintiffs allegations simply do not rise to the level of injury described in *Ayyad* where the inmate was being preventing from communicating with law students who were representing him. *See Ayyad*, 2008 WL 203420, at **5-9. Assuming Plaintiffs are owed some heightened protection regarding communication with lawyers who do not represent them, only mail that is properly marked as special legal mail deserves special protection from being opened or destroyed. *See* 28 C.F.R. §§ 540.12(b) & 540.19(b). Here, neither attorney's

communications contained the appropriate label[7] and prison officials were justified in opening their contents and confiscating what they determined to be contraband.[8] *See Response Ex.* [#127-2] at 5-6, & 15. In fact, the only communication from Mr. Knight in Plaintiff Stine's file was addressed to ADX legal staff, not Plaintiffs. *Id.* at 5-6. While Mr. Knight asked that the legal staff share certain documents contained therein with Plaintiffs, he specifically noted that he deferred to the legal staff's judgment as to whether such documents would be appropriate to pass along. *Id.*[9] Again, the evidence does not support Plaintiffs' claim that Defendants impermissibly intercepted special legal mail. Even if that were not the case, Plaintiffs fail to articulate how their endeavors in this case have been negatively impacted by their inability to receive correspondence from these individuals.

---

[7] While Plaintiffs attached an envelope from Mr. Manville that displayed the special legal mail marking, *Motion* [#71] at 30 (dated March 2008), this was not the envelope which contained the January 2008 communication at issue here. *Response Ex.* [#127-2] at 4, 15. Plaintiffs' attempt to mislead the Court is not well taken and further justifies the Court's Recommendation on this issue.

[8] For instance, Mr. Manville sent Plaintiffs a letter which discussed the complaint of another ADX inmate and attached that inmate's civil complaint. *Response* [#127] at 10-11. Here, Defendants concede they rejected Mr. Manville's correspondence based on an erroneous determination that the communication depicted matters that encourage activities which could lead to violence. *Id.* at 11 n.4. Defendants inform the Court that the rejection notice should have indicated that the communication was being denied because it was determined to be detrimental to the safety of the facility in that the communication described cell configuration and security conditions imposed upon an inmate, which is information not made known to other inmates at the facility. *Id.* at 10-11. Inmates may not possess the legal papers of another inmate except in specific circumstances, 28 C.F.R. § 543.11(f)(2), and this Court will not second guess Defendants' decision to withhold this information from Plaintiffs based on legitimate security concerns. 28 C.F.R. § 540.14(d); *see also Turner*, 482 U.S. at 89 (noting that the day-to-day judgments made by prison officials are not subject to inflexible strict scrutiny). In any event, Plaintiffs do not indicate how access to this communication is relevant to the claims contained in their complaint.

[9] Defendants have now agreed to provide one of the articles sent by Mr. Knight to Plaintiffs. *Response* [#127] at 12. As to the remaining two articles sent by Mr. Knight, Plaintiffs fail to explain how either are relevant to the present claims contained in their complaint.

Finally, to the extent that Plaintiffs contend that Defendants are confiscating letters sent to Senator Kerry, they fail to substantiate this claim or point to any resulting impact on their ability to prosecute the present case. As such, not only does Plaintiffs' vague, unsubstantiated, and conclusory claim fail to demonstrate harm that exceeds more than "merely serious or substantial" harm, this claim once again fails to demonstrate any harm.

Next, even if Plaintiffs could demonstrate some injury, they must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258. Plaintiffs have not addressed or demonstrated whether the alleged harm to them outweighs the potential damage the injunction may cause Defendants or whether an injunction would be adverse to the public interest. Plaintiffs have failed to meet their burden regarding these two requisite elements.

Finally, Plaintiffs must show that they have a substantial likelihood of success on the merits of their claims. *Id.* Plaintiffs bring Fifth and Eighth Amendment claims regarding their transfer to and continued incarceration at ADX. While Plaintiffs' allegations relating to access to the Courts are not contained within their complaint, as noted earlier, they may assert these allegations at any time. *See Ayyad*, 2008 WL 203420, at *3. However, in relation to the present Motions, Plaintiffs fail to address whether they would succeed on the merits of their Fifth and Eighth Amendment claims or their claims that they are being denied access to the Courts. *Hall*, 935 F.2d at 1110 (holding that a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"); *Bryant v. NFL, Inc.*, No. 07-cv-02186-MSK-MJW, 2007 WL 3054985, at *2 (D. Colo. Oct. 18, 2007) (unpublished decision) (holding that unverified, conclusory

allegations will not support a motion for injunctive relief). As to the claims raised in their complaint, the conditions imposed on prisoners in the general population at ADX have been a frequent subject of litigation and have been consistently upheld. *See, e.g.*, *Hill v. Pugh*, 75 Fed. Appx. 715 (10th Cir. Sept. 11, 2003) (unpublished decision); *Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 WL 3797871 (D. Colo. Dec. 22, 2006) (unpublished decision). As to the claims raised in their Motions, Plaintiffs fail to adequately support their allegations that they are being denied access to the Courts. *See Lewis v. Casey*, 518 U.S. 343, 349-55 (1996). As such, Plaintiffs have not demonstrated a substantial likelihood of success on the merits of the claims in their complaint or in their Motions.

Accordingly, as Plaintiffs have failed to satisfy the four prerequisites to obtaining a preliminary injunction, I respectfully **RECOMMEND** that the Motions [Docket Nos. 71 & 93] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 13, 2008

BY THE COURT:

 s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix