IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-1839-WYD-KLM

MIKEAL GLENN STINE; and
RAYMOND OECHSLE,

    Plaintiffs,

v.

HARLEY LAPPIN, Director BOP;
MICHAEL NALLEY, Regional Director BOP; and
RON WILEY, Warden ADX Supermax,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on *pro se* Plaintiffs' **Renewed Motion for Emergency Evidentiary Hearing/T.R.O. and Preliminary Injunction Pursuant to Rule (60)(b) F.R.Civ.P.** [Docket No. 49; Filed January 3, 2008], **Letter to District Judge Wiley Y. Daniels** [sic] **to Decide the Renewed Motion** [Docket No. 66; Filed March 13, 2008], and **Motion to Expedite Renewed Motion for TRO/Preliminary Injunction Due** [sic] **Imminent Danger** [Docket No. 78; Filed March 25, 2008] (collectively the "Renewed Motions").[1] The Renewed Motions request that the Court hold an emergency evidentiary hearing in light of new evidence and enter injunctive relief due to several prison officials allegedly placing Plaintiffs in imminent danger of being harmed by the "Aryan Brotherhood,

---

[1] Although each Plaintiff's case has now been severed [Docket No. 154], these motions were filed jointly and prior to severance.

Mexican mafia 'EME,' or Gan[g]ster Deciples [sic]." *Renewed Motions* [#49] at 1, [#78] at 2-3. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation.

The Court has reviewed the Renewed Motions, Defendants' Response [Docket No. 126; Filed May 30, 2008], Plaintiffs' First Reply [Docket No. 132; Filed June 9, 2008], Plaintiffs' Second Reply [Docket No. 142; Filed June 19, 2008], the entire case file, and the applicable law and is sufficiently advised in the premises. The Court finds that a hearing will not materially assist in resolving the Renewed Motions. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Renewed Motions be **DENIED**.

By way of background, Plaintiffs are prisoners at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado. They claim that Defendants violated their due process rights by transferring them to ADX without notice and a hearing and that their continued confinement at ADX constitutes cruel and unusual punishment [Docket No. 3; Filed August 31, 2007]. To date, Plaintiffs have filed nine motions seeking injunctive relief [Docket Nos. 6, 12, 19, 21, 49, 66, 71, 78, & 93]. Their first four motions, which alleged that Plaintiffs' housing assignment placed them in imminent danger of serious injury, were denied on November 2, 2007 [Docket No. 36; Filed November 2, 2007].[2] Although these motions were denied on their merits, the District Court warned

---

[2] In their Renewed Motions, Plaintiffs acknowledge that they have been denied similar injunctive relief on several previous occasions, including in *Stine v. Wiley*, No. 06-cv-02105-WYD-PAC, 2007 WL 201251 (D. Colo. Jan. 24, 2007) (unpublished decision). *Renewed Motions* [#49] at 1-3. In that case, after an extensive evidentiary hearing involving substantially similar claims, District Court Judge Wiley Y. Daniel held that a preliminary injunction should not issue because Plaintiff Stine's housing assignment in the General Population Unit did not pose a substantial risk of serious harm or immediate danger of being harmed by other inmates. *Stine*, 2007 WL 201251, at *3.

Plaintiffs that their continued filing of expedited motions seeking injunctive relief were viewed as attempts to inundate the Court with baseless filings. *Order* [#36] at 5.

In clear disregard of the District Court's warning, Plaintiffs now renew, in light of allegedly new evidence, their previously denied requests for injunctive relief regarding their housing assignment, accompanied by two motions for expedited consideration. *See Renewed Motions* [##49, 66, & 78]. Like Plaintiffs' earlier requests for injunctive relief, Plaintiffs assert that they are targeted by the Aryan Brotherhood ("AB") for either testifying or offering to testify against several high-ranking AB members and other prison gang members. *Id.* [#49] at 1-3. Plaintiffs generally allege that Defendants have placed them in imminent danger of serious harm by currently housing them on the same cell "range" or "run" with people who they provided information against and by potentially approving Plaintiffs for enrollment in the Step-Down Unit Program sometime in the future. *Id.* Plaintiffs request that the Court grant them relief by: (1) issuing a temporary restraining order to require Defendants to move Plaintiffs to another housing unit; (2) issuing a temporary restraining order to enjoin Defendants from removing Plaintiffs from their current housing unit; (3) issuing any preliminary injunction that the Court deems necessary; and (4) issuing a permanent injunction to require Defendants to immediately reinstate the Protective Housing Unit.[3] *Id.* [#49] at 2-3, [#78] at 3. Although several of these requests for relief are inconsistent with each other, the Court is inclined to decide Plaintiffs' Renewed Motions on their merits.

---

[3] As inmates in protective custody and the general population at ADX have similar security needs, ADX converted its separate Protective Custody Unit into a General Population Unit, which is where Plaintiffs are currently housed. *Declaration of Mark Collins* [#126-2] at 10.

As a preliminary matter, because Plaintiffs are prisoners who are proceeding *pro se*, the Court must construe their pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigants' advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigants'] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

Plaintiffs contend that they have discovered new evidence regarding the ability of other inmates to harm them. *Renewed Motions* [#49] at 3. Plaintiffs allege the following: (1) nonparty Officer Martin opened all of the cell doors on Plaintiff Oechsle's range while stating "I'm going to fight fire with fire"; (2) Warden Ron Wiley threatened to move Plaintiff Stine to a location where other inmates would kill him; (3) gang members breached their exercise pens; (4) ADX is inadequately staffed to protect Plaintiffs from harm; (5) several inmates attempted to murder nonparty inmate Kinsey Lewis by beating him over the head with a meal tray after involuntarily "stepping-down"; (6) nonparty inmate Emellio Bravo was assaulted by a homemade knife after involuntarily "stepping-down"; (7) Plaintiff Oechsle will soon involuntarily "step-down"; and (8) cell doors throughout ADX accidently open during stormy weather. *Id.* [#49] at 2-7, [#78] at 2; *Plaintiffs' Second Reply* [#142] at 1-2.

Turning to the merits of Plaintiffs' Renewed Motions, to obtain a temporary restraining order, Plaintiffs must clearly demonstrate "that immediate and irreparable injury, loss, or damage will result" unless a temporary restraining order is issued. Fed. R. Civ. P. 65(b). Similarly, to obtain a preliminary injunction pursuant to Fed. R. Civ. P. 65(a), Plaintiffs must show: (1) a substantial likelihood of success on the merits; (2) irreparable

4

harm to the Plaintiffs if the injunction is denied; (3) the threatened injury outweighs the harms that the preliminary injunction may cause the Defendants; and (4) the injunction, if issued, will not adversely affect the public interest. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003) (citation omitted). When a preliminary injunction would alter the status quo, such as requiring Defendants to immediately reinstate the Protective Housing Unit, Plaintiffs bear a heightened burden and "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006). Moreover, "[a]s a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

It is well established that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction" and a temporary restraining order. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). "To constitute irreparable harm, an injury must be great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted). Therefore, to demonstrate irreparable harm, Plaintiffs "must establish both that harm will occur, and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 Fed. Appx. 104, 106 (10th Cir. 2007).

Plaintiffs fail to adequately show that they are facing immediate and irreparable injury. Assuming *arguendo* that Plaintiffs sufficiently established that they are targeted by the AB, Plaintiffs fail to demonstrate that they are in imminent danger of being harmed. Plaintiffs are housed in single-cells and have no physical contact with other inmates.

5

*Declaration of Mark Collins* [#126-2] at 8. Because both are housed in the General Population Unit, Plaintiffs eat all of their meals in their cells, their shower stalls are located in their cells, and they receive the majority of penal programs via close circuit television. *Id.* at 4. When Plaintiffs are moved from their cells, they are cuffed and escorted by two prison officials, one of whom carries a baton. *Id.* In addition, Plaintiffs recreate alone in exercise pens that are constructed with heavy-duty fencing. *Id.* Accordingly, because Plaintiffs currently have no physical contact with other inmates, Plaintiffs fail to establish that there is any likelihood that other inmates may harm them. Further, by requesting a temporary restraining order to remain in the General Population Unit, Plaintiffs acknowledge that their current housing placement adequately protects them from being harmed by other inmates. *See Renewed Motions* [#78] at 3. In addition, none of the evidence presented by Plaintiffs regarding other inmates allegedly being assaulted speaks to the potential harm or danger to Plaintiffs. This is particularly true because the alleged assaults of nonparty inmate Kinsey Lewis and nonparty inmate Emillio Bravo occurred in less-restrictive units than where Plaintiffs are currently housed. *Renewed Motions* [#49] at 3; *Plaintiffs' Second Reply* [#142] at 1-2.

To the extent that Plaintiffs allege that inmates have the ability to harm them while they are in the exercise pen, and that they are in danger due to prison official misconduct or the cell doors accidentally opening during stormy weather, Plaintiffs fail to provide sufficient evidentiary support. First, Plaintiffs' unsubstantiated assertion regarding the accidental opening of cell doors during stormy weather does not materially differ from information presented during an evidentiary hearing on a related matter, during which District Court Judge Daniel made the finding of fact that the possibility of such an

occurrence "is remote and wholly speculative." *Stine*, 2007 WL 201251, at *3. Moreover, there is no evidence to substantiate Plaintiffs' contentions regarding inmates breaching the exercise pens and alleged threats that they have received from BOP staff. To the contrary, Defendants contend that many of Plaintiffs' assertions "are simply not true" and that, since the evidentiary hearing, there have been no inmate attacks in the General Population Unit. *Response* [#126] at 8. Therefore, as noted above, Plaintiffs fail to sufficiently show that their placement in the General Population Unit or time spent in recreation poses a substantial risk of serious harm or immediate danger of being harmed by other inmates. *See Schrier*, 427 F.3d at 1258.

In relation to Plaintiffs' allegation that they will be harmed if they are enrolled in the Step-Down Unit Program and moved to a less-restrictive unit, Plaintiffs allege that, unlike the General Population Unit, less-restrictive units allow ADX prisoners to have physical contact with other inmates. However, the Court notes that Defendants have no plans to step-down either Plaintiff at this time. *Response* [#126] at 9. Given Defendants' admission, the Court finds that the alleged injury is remote or perhaps entirely illusory, as the decision as to whether to allow Plaintiffs to step-down is within the discretion of Defendants, and step-down may thus never occur. As such, the potential for future enrollment in the Step-Down Unit Program does not pose an immediate danger to Plaintiffs. *Id.*

Next, even if Plaintiffs could demonstrate some injury, they must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258. Plaintiffs have not addressed or demonstrated

7

whether the alleged harm to them outweighs the potential damage the injunction may cause Defendants or whether an injunction would be adverse to the public interest. Plaintiffs have failed to meet their burden regarding these two requisite elements.

Finally, Plaintiffs must show that they have a substantial likelihood of success on the merits of their claims. *Id.* Plaintiffs bring Fifth and Eighth Amendment claims regarding their transfer to and continued incarceration at ADX, yet they fail to address with any specificity whether they would succeed on the merits of their claims. *Hall*, 935 F.2d at 1110 (holding that a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"); *Bryant v. NFL, Inc.*, No. 07-cv-02186-MSK-MJW, 2007 WL 3054985, at *2 (D. Colo. Oct. 18, 2007) (unpublished decision) (holding that unverified, conclusory allegations will not support a motion for injunctive relief). Further, the conditions imposed on prisoners in the general population at ADX have been a frequent subject of litigation and have been consistently upheld. *See, e.g.*, *Hill v. Pugh*, 75 Fed. Appx. 715 (10th Cir. Sept. 11, 2003) (unpublished decision); *Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 WL 3797871 (D. Colo. Dec. 22, 2006) (unpublished decision). As such, Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their claims.

In conclusion, I find that Plaintiffs fail to articulate new evidence or information to prompt this Court to recommend that injunctive relief be provided. The circumstances under which Plaintiffs are currently incarcerated do not give rise to a substantial risk of serious harm or place them in imminent danger such that they would be entitled to the relief sought in the Renewed Motions. Accordingly, I respectfully **RECOMMEND** that Plaintiffs' Renewed Motions [##49, 66, & 78] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 31, 2008

BY THE COURT:

　s/ Kristen L. Mix　
United States Magistrate Judge