IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01839-WYD-KLM

MIKEAL GLENN STINE,

      Plaintiff,

v.

HARLEY LAPPIN, Director B.O.P.,
MICHAEL NALLEY, Regional Director B.O.P., and
RON WILEY, Warden ADX Supermax,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L.  MIX**

This matter is before the Court on **Defendants' Motion to Dismiss Plaintiff Stine's Claims** [Docket No. 163; Filed July 15, 2008] ("Motion to Dismiss").  Plaintiff filed a Response on July 24, 2008 [Docket No. 171], and Defendants filed a Reply on August 5, 2008 [Docket No.  180].  The Motion to Dismiss has now been fully briefed and is ripe for resolution.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the Motion has been referred to this Court for recommendation.  The Court has reviewed the Motion to Dismiss, Plaintiff's Response, Defendants' Reply, the case file, and applicable case law and is sufficiently advised in the premises.  For the reasons provided below, I respectfully recommend that the Motion to Dismiss be **GRANTED in part and DENIED in part**.

### I.  Factual Background

Plaintiff, a prisoner proceeding *pro se*, brings claims against Defendants Lappin, Nalley, and Wiley, each in their individual and official capacities, pursuant to *Bivens v. Six*

*Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971). Co-Plaintiff Raymond Oechsle's claims were severed, and have now been voluntarily dismissed [Docket Nos. 154 & 221]. Plaintiff's federal lawsuit seeks to address his incarceration at the United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX"). Plaintiff contends that Defendants' incarceration of Plaintiff at ADX violates his Fifth, Eighth, and Fourteenth Amendment rights [Docket No. 3 at 4; Filed August 31, 2007] ("complaint").

Plaintiff is serving a federal sentence with a projected release date of September 9, 2022. Plaintiff was transferred to ADX on October 2, 2006, and has been confined in the general population unit (or "D Unit") at ADX since his incarceration there. *Complaint* [#3] at 5. As an inmate in the general population unit at ADX, Plaintiff claims that his freedom is severely limited. *Id.* at 3-7. He is confined alone in a cell and not allowed to converse with inmates in adjoining cells. *Id.* at 6. He eats his meals alone in his cell, and when he is allowed recreation, he must do so in a fenced-in cage, or "dog cage." *Id.* He is denied human contact, and visitation is conducted through glass. *Id.* He contends that his "[i]ncarceration at ADX is synonymous with extreme isolation/segregation." *Id.* He also claims that "placement here at ADX is indefinite and disallows work programs to pay fines or anything else." *Id.* He claims that placement at ADX "imposes an atypical and significant disciplinary hardship within a correctional context" and that he has "a liberty interest in avoiding placement at ADX" without first receiving due process, i.e., a "hearing allowing [sic] to present evidence, call witnesses and make a statement as to why he should not be placed at ADX." *Id.* at 3.

In addition to his current conditions of confinement, Plaintiff claims that his

placement generally at ADX endangers his safety. Specifically, he claims that ADX houses a large number of members of the prison gang known as the Aryan Brotherhood and that "Defendants and the Federal Bureau of Prisons know [Plaintiff] will be killed by A/B or their associates if ever mixed with each other." *Id.* at 8. Plaintiff has allegedly "cooperated with Judges, Law enforcement, Federal Bureau of Prisons and United States District Courts by assisting and or providing information against the Aryan Brotherhood . . . and their associates." *Id.* Although Plaintiff's current incarceration in the general population unit does not allow Plaintiff to "mix" with any other inmates, Plaintiff may be required at some point in the future to "step down" to a less-restrictive unit, e.g., J or K Units, "where inmates mix with each other and is [sic] called Blood Alley due [sic] such inmates." *Id.* Although Plaintiff's injury is speculative, he claims that "individuals need not await injury prior to seeking the Courts [sic] assistance in preventing death or serious injury." *Id.* at 9.

At ADX, in order to move from the general population unit to a less-restrictive housing assignment – i.e., the intermediate unit, the transitional unit, and the pre-transfer unit – an inmate must be enrolled in the Step-Down Unit Program (or "Program"). *Motion* [#163] at 12.[1] Since his incarceration at ADX in 2006, Plaintiff has not been enrolled in the Step-Down Unit Program and remains incarcerated in the general population unit. Enrollment in the Program is significant because it is the vehicle through which an inmate can later be moved from ADX to a less-restrictive facility. However, transition between the levels of the Program is not automatic, in that an inmate must still satisfy certain criteria to

---

[1] The ADX Step-Down Unit Policy has been the subject of litigation and is described in public documents. *See Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 WL 3797871, at *5 (D. Colo. Dec. 22, 2006) (unpublished decision).

be eligible for different placement.  Although Plaintiff claims an interest in being transferred out of ADX, he also claims that participation in the Program, as it is presently structured, would put his life in danger.

Plaintiff alleges two claims for relief:

Claim I          Violation of Liberty Interest Right/Due Process as Garanteed [sic] by 5th and 14th Amendment to USA [sic].

Claim II         Unsafe Incarceration Violating 8th Amendment of the United States [sic].

As a preliminary matter, the Court notes that Plaintiff's claims appear to be inconsistent with each other.  On the one hand, Plaintiff contends that incarceration in D Unit is overly restrictive and an atypical condition of confinement.  On the other hand, although the J & K Units are less restrictive and allow for the kinds of interaction that Plaintiff complains about being deprived of in Claim I, and also would allow for his eventual transfer out of ADX, Plaintiff contends that it would be cruel and unusual punishment for Plaintiff to be transferred to either of those units against his will at some point in the future. A review of Plaintiff's request for relief clarifies Plaintiff's goals in this litigation.[2]  In addition to money damages for the alleged violation articulated in Claim I, Plaintiff requests that the Court order (1) that he be "immediately removed from ADX pending proper due process hearings"; (2) that ADX create a special step-down and work program, which enrolls only

---

[2] Plaintiff is also the filing party in at least four (4) other federal lawsuits, all of which impact, to some extent, his confinement at ADX or his status as a witness against the Aryan Brotherhood.  (1) Civil Action No. 07-cv-02203-WYD-KLM (D. Colo.); (2) Civil Action No. 08-cv-00164-WYD-KLM (D. Colo.); (3) Civil Action No. 5:08-cv-00251-RGK-MLG (C.D. Cal.); and (4) Civil Action No. 6:06-cv-00021 (S.D. Tex.).  Moreover, within the last year, Plaintiff has had at least six cases dismissed in this District and others, and at least two appeals dismissed by the Tenth Circuit Court of Appeals.

those inmates who have cooperated against the Aryan Brotherhood and houses them where no members of the Aryan Brotherhood, "Mexican Mafia," and "Dirty White Boys" are housed; and (3) that a special master be appointed to assist ADX inmates in complaining about the conditions of their confinement directly to the Court. *Id.* at 12.

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. *Motion* [#163]. Specifically, Defendants contend that the official capacity claims for damages against them should be dismissed, that the Court lacks personal jurisdiction over Defendants Lappin and Nalley, that Defendants are entitled to qualified immunity in their individual capacities, that certain injunctive relief sought is barred by statute, and that Plaintiff has failed to state a cognizable Fifth or Eighth Amendment claim. Plaintiff argues that Defendants are not entitled to qualified immunity and that he has sufficiently stated constitutional claims. *Response* [#171]. Defendants' reply reasserts arguments made in their Motion and attempts to contradict Plaintiff's claims by setting forth additional factual contentions. *Reply* [#180].

## II. Standard of Review

Because federal courts are courts of limited jurisdiction, the Court must have a statutory basis for exercising jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has subject-matter jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of*

*Oneida*, 414 U.S. 661, 666 (1974)).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties.  Plaintiff bears the burden of establishing personal jurisdiction over all of the Defendants.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  The Court will accept the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the complaint as true to determine whether Plaintiff has made a *prima facie* showing that personal jurisdiction exists.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007)).  "The court's function on a Rule

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

The Court notes that the parties attached or referred to declarations in their Motion pleadings. Because the Court's review of the Motion to Dismiss is based upon consideration of the allegations contained in the complaint, the Court does not consider extraneous documents attached or referenced by either party or additional factual assertions contained therein. *See MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002); *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

### A. Official Capacity Claims

Plaintiff filed suit against Defendants in both their individual and official capacities. *Complaint* [#3] at 1. Defendants assert that they are immune from liability in their official capacities. *Motion to Dismiss* [#163] at 4-5. Plaintiff seeks monetary damages against the named Defendants, who are officers and agents of the United States. *Complaint* [#29] at 16-17. "[A]ny action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001). As such, "to the extent this suit for damages is against [these Defendants] in [their] official capacity, it is barred by sovereign immunity." *Kyler v. Everson*, 442 F.3d 1251, 1252-53 (10th Cir. 2006) (citing *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). Accordingly, Plaintiff's request for monetary damages against Defendants in their official capacities must be dismissed.

By contrast, Plaintiff's requests for injunctive relief against Defendants is not barred by the doctrine of sovereign immunity. *See Simmat v. United States BOP*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations). Accordingly, Plaintiff's requests for injunctive relief may proceed to the extent that his claims survive Defendants' Motion to Dismiss.

### B.    Personal Jurisdiction Over Defendants Lappin and Nalley

As noted earlier, Plaintiff asserts claims against Defendants in their official and individual capacities. Defendants argue that the claims against Defendants Lappin and Nalley should be dismissed for lack of personal jurisdiction. Neither Defendant Lappin nor Nalley resides or works in the State of Colorado. According to the complaint, Defendant Lappin is the Director of the Bureau of Prisons ("BOP) and resides in Washington, D.C.

*Complaint* [#3] at 2. According to the complaint, Defendant Nalley is the Regional Director of the BOP and resides in Kansas City, Kansas. *Id.*

Although Plaintiff contends that Defendants Lappin and Nalley are responsible for placing him at ADX and enforcing the Step-Down Unit Policy, "attempts to make out a case for personal jurisdiction over these defendants by arguing that each of them authorized or implemented [actions] knowing that the effects of these [actions] would be felt by him in Colorado" are insufficient. *Hale v. Ashcroft*, No. 06-cv-00541-REB-KLM, 2007 WL 2350150, at *3 (D. Colo. Aug. 15, 2007) (unpublished decision). Further, "the actions on which plaintiff relies in support of his allegations of personal jurisdiction all clearly were taken by defendants in their capacities as federal officials and employees. Such actions do not suffice to establish minimum contacts for purposes of an individual capacity suit against a federal employee." *Id.*; *see also Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. Sept. 11, 2003) (unpublished decision) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national responsibilities over facilities within a forum state."). Accordingly, Plaintiff's claims against Defendants Lappin and Nalley in their individual capacities must be dismissed.[3]

### C.    Fifth Amendment

In Claim I, Plaintiff alleges that his placement at ADX is a violation of the Fifth

_____

[3] To the extent that Plaintiff makes claims against these Defendants in their <u>official</u> capacities, such claims are against the United States. *See Farmer*, 275 F.3d at 963. Accordingly, although the official capacity claims relating to injunctive or other nonmonetary relief are not dismissed and these individuals remain named Defendants, they have no personal liability on the remaining claims.

Amendment.[4]  To state a plausible due process claim pursuant to the Fifth Amendment, Plaintiff must allege that he (1) was deprived of a liberty or property interest (2) without constitutionally required safeguards.  *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). The Fifth Amendment does not automatically confer a liberty interest to be free from confinement conditions imposed when a prisoner is serving a lawful sentence.  *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Rather, a due process right is only triggered when a prisoner suffers an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  A determination of what constitutes an atypical and significant hardship necessarily includes consideration of whether the conditions in question are a dramatic departure from what would be expected of a person serving a similar sentence.  This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from conditions experienced by prisoners in the general prison population; and (3) increases the duration of a prisoner's sentence.  *Id.* at 484-87.  In *Sandin*, the Supreme Court found that detention in disciplinary segregation for thirty days did not violate a liberty interest.  *Id.* at 487.

More recently, the Supreme Court revisited this issue in *Wilkinson v. Austin*, 545 U.S. 209 (2005).  Specifically, the Court considered whether prisoners were deprived of a liberty interest by their placement in Ohio's super maximum prison and whether they were provided sufficient process regarding that placement.  *Id.* at 213. The Court considered the

_____

[4] Although Plaintiff asserts violations of both the Fifth and Fourteenth Amendment, the Fourteenth Amendment applies to the conduct of state, rather than federal, actors.  *See generally Dusenbery v. United States*, 534 U.S. 161, 167 (2002).  Defendants are employed by the United States and, as such, their conduct is governed by the Fifth Amendment.

totality of the conditions at the super maximum prison in determining whether confinement there imposed an atypical and significant hardship. *Id.* at 214-15. The conditions at issue in *Wilkinson* are similar to those complained of here, namely (1) the prohibition of human contact, including conversation between prisoners in neighboring cells; (2) solitary confinement in a cell with limited opportunity for exercise; and (3) indefinite incarceration at the super maximum prison with no preliminary review and limited follow-up review regarding the continued propriety of placement there. Also present in *Wilkinson*, but not pled here, were the facts that the lights were left on twenty-four hours per day in each cell and that placement at the super maximum prison disqualified a prisoner for parole. *Id.* Given the totality of these conditions, the Court found that confinement at the super maximum prison constituted an atypical and significant hardship such that a prisoner's incarceration there was subject to due process protections. *Id.* at 220-24.

The Tenth Circuit has also had occasion to address this issue. *Hill v. Fleming*, 173 Fed. Appx. 664, 668-72 (10th Cir. Apr. 4, 2006) (unpublished decision). In *Hill v. Fleming*, the inmate alleged that his confinement in segregation for 399 days, where he was confined alone for twenty-three hours a days and denied a myriad of privileges that prisoners in the general population were afforded, deprived him of a liberty interest. *Id.* at 666. While the Tenth Circuit ultimately found that the defendants were entitled to qualified immunity, the Court specifically noted that summary judgment was not appropriate on the issue of whether an inmate at USP-Florence had a protected liberty interest in his conditions of confinement given the genuine factual dispute created by the inmate's claims. *Id.* at 668.

By contrast, in *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 653 (10th Cir. July 25, 2006) (unpublished decision), the Tenth Circuit agreed with the district court

that summary judgment was appropriate on the issue of whether an inmate confined in segregation at ADX and USP-Florence for five years pending a murder investigation had a protected liberty interest. The inmate alleged that he was denied access to radio, television, education and recreational programs and medical and psychological services. *Id.* at 644. He also alleged that he was limited to one social call per month and his interaction with other inmates and recreation were strictly curtailed. *Id.* The Tenth Circuit found that given the totality of the circumstances, including that the length of the prisoner's sentence was unaffected, his duration of confinement in segregation was not indefinite but tied to the length of the investigation, his segregation did not deviate substantially from the conditions imposed upon those in the general population, and the prisoner continued to commit disciplinary infractions further contributing to the length of his segregation, the inmate failed to prove he had a protected liberty interest. *Id.* at 652-53. The Tenth Circuit specifically noted that the conditions complained of were not as onerous as those at issue in *Wilkinson*. *Id.* at 652.

Lastly, the Tenth Circuit addressed whether a hermaphrodite was deprived of a protected liberty interest when she was confined in segregation for the duration of her fourteen-month incarceration. *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334 (10th Cir. 2007). In addition to a comparison of the prisoner's conditions of confinement with those of the general prison population, the Tenth Circuit also determined that several additional factors should be considered in an analysis related to whether a liberty interest is implicated. Specifically, courts should consider "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the

duration of confinement, as it did in *Wilkinson*; and (4) the placement is indeterminate . . . ." *Id.* at 1342. The Tenth Circuit held that no protected liberty interest was implicated because the prisoner was assigned to segregation for her own protection, she was allowed to be out of her cell for 5 1/2 hours every day, she had access to library, recreational, and religious facilities and other prison programs, the segregation did not lengthen her incarceration, and her assignment was reviewed every ninety days. *Id.* at 1343-44. While the Tenth Circuit also noted that the prisoner was denied interaction with other inmates and her conditions of confinement deviated from those in the general population, the court found that considering the totality of the factors, the prisoner's segregation did not amount to an atypical or significant hardship. *Id.*

Unpublished precedent from courts of this District is also instructive. In *Thompson v. Winn*, 07-cv-00025-MSK-KLM, 2008 WL 901570, **6-9 (D. Colo. Mar. 31, 2008) (unpublished decision), the district court held that a prisoner's complaint regarding his segregation at USP-Florence for approximately 500 days was not appropriate for resolution on a motion to dismiss. The prisoner claimed he was assigned to segregation for his protection as a government witness in a murder case. *Id.* at **1-2 His segregation included confinement in his cell for twenty-three hours per day, handcuffing when he left his cell, restricted access to telephone, showers, recreation, the law library and educational programs, and noncontact visits only with family. *Id.* The court specifically noted that the conditions complained of fell "somewhere between those in *Hill*, where there was arguably a liberty interest, and *Jordan*, where there was not." *Id.* at *6. Given that the prisoner was proceeding *pro se*, the district court concluded that he had stated a plausible due process claim at the motion-to-dismiss stage of the proceedings. The court also noted that the

13

"determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in their totality." *Id.*

Considering the first factor enunciated in *DiMarco*, namely whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation, Plaintiff argues that he does not fall within the class of inmates that ADX was meant to house. *Complaint* [#3] at 5 (indicating that "ADX is a supermaximum facility with highly restrictive condition [sic] designed to segregate the <u>most</u> dangerous BOP prisoners from the general population"). Plaintiff essentially contends that his placement does not serve a legitimate purpose. Defendants counter that Plaintiff's underlying convictions and previous institutional behavior justify his placement at ADX. *Motion* [#163] at 16. Given the facts alleged in the complaint, I find that this factor weighs in favor of Plaintiff. Many of Defendants' factual assertions go beyond those addressed in the complaint, and the Court does not rely on such assertions herein. Moreover, the Court notes that if Plaintiff's underlying convictions were a legitimate justification for his placement at ADX, placement there would have been warranted at the time of his initial incarceration.

Considering the second factor enunciated in *DiMarco*, namely whether the conditions of placement are extreme, Plaintiff alleges that the conditions at ADX within the general population impose an extreme form of isolation. *Complaint* [#3] at 3. Moreover, he alleges that the conditions are similar to those at issue in *Wilkinson*, which were found to constitute an atypical and significant hardship. *Id.* at 7. Defendants counter that the conditions described by Plaintiff are typical of those experienced by every prisoner in the general population at ADX and note that similar conditions have been upheld. *Motion* [#163] at 11; *see Jordan*, 191 Fed. Appx. at 652. To the extent that Defendants make

additional factual assertions regarding Plaintiff's conditions in an attempt to downplay or contradict allegations contained in the complaint, such assertions are inappropriate at this stage of the case, and the Court does not consider them. *See Jackson*, 952 F.2d at 1261. While several Tenth Circuit cases have ultimately concluded that the conditions at ADX do not implicate the deprivation of a liberty interest after a consideration of all the facts and evidence at issue, *Wilkinson* and at least one case from this district recognize that similar conditions may support a liberty interest claim for purposes of surviving a motion to dismiss. *Compare Jordan*, 191 Fed. Appx. at 652-53, *with Wilkinson*, 545 U.S. at 223-24, *and Thompson*, 2008 WL 901570, at *6. In addition, the *Hill* Court noted that similar factual claims are inappropriate for preliminary resolution. *Hill*, 173 Fed. Appx. at 668. I find that this factor also weighs in favor of Plaintiff.

Considering the third factor enunciated in *DiMarco*, namely whether the placement increases the duration of confinement, Plaintiff's complaint does not address this claim. The fact that an inmate's term of confinement may be impacted by his prolonged placement at a facility was a key consideration to the Supreme Court in *Wilkinson*. *See Wilkinson*, 545 U.S. at 224. As such, the Court finds that Plaintiff has failed to plead sufficient information to conclude that this factor weighs in his favor.

Finally, considering the fourth factor enunciated in *DiMarco*, namely whether the placement is indeterminate, Plaintiff argues that his confinement at ADX is indefinite. *Complaint* [#3] at 6. Defendants counter that incarceration at ADX is not indefinite because of the availability of the Step-Down Unit Program. *Motion* [#163] at 11-12. Pursuant to the Step-Down Unit Policy, an inmate must spend a minimum of 12 months at the facility before being considered for enrollment in the Program. *Id.* at 11. Although Plaintiff does

not desire enrollment in the Step-Down Unit Program as it is presently structured, the Court notes that Plaintiff has been eligible for enrollment in the Program for more than one year. Given Defendants' representation that they have no plans to step down Plaintiff, this lends support for Plaintiff's contention that his incarceration at ADX may be indefinite.[5] To the extent that Defendants argue that Plaintiff has purposely committed misconduct to prevent enrollment in the Program such that he is responsible for the indefinite nature of his confinement at ADX, the Court does not consider these allegations because they are not supported by Plaintiff's complaint. At this stage, the Court is persuaded that the indeterminate nature of Plaintiff's confinement at ADX is at issue, such that this factor weighs in favor of Plaintiff.[6]

Inasmuch as Plaintiff's complaint can be interpreted to challenge his placement and continued incarceration at ADX, Plaintiff has sufficiently alleged the deprivation of a liberty interest considering the totality of the conditions alleged in light of those asserted in *Wilkinson*, *Hill*, and *Thompson*.

Implication of a liberty interest is the threshold consideration regarding whether

---

[5] Although this representation is not contained in Plaintiff's complaint, Defendants made this representation in an earlier pleading filed in this case and relied upon by the Court [Docket Nos. 126 & 175]. The Court may take judicial notice of matters of public record. *Vibe Techs., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion).

[6] As in *Sandin* and *DiMarco*, this Court considers whether the conditions complained of in Plaintiff's complaint differ from those experienced by others. While it appears that the conditions complained of by Plaintiff are typical of those imposed on other inmates in the general population at ADX, the complaint implicitly suggests that such conditions are atypical of those experienced by prisoners at other facilities, particularly given the allegation that inmates at ADX are not allowed to have employment or earn money. *Complaint* [#3] at 6. Although there may be nothing unique about the conditions endured by prisoners housed in the general population at ADX in comparison with each other, the Court finds that this factor slightly weighs in Plaintiff's favor.

Plaintiff's due process claim can go forward. Plaintiff must also sufficiently allege that he failed to receive the appropriate level of process regarding his placement at ADX. *Wilkinson*, 545 U.S. at 224. Here, Plaintiff alleges that he was not afforded notice or an opportunity to be heard prior to his placement at ADX. *Complaint* [#3] at 6-7. In addition, he implicitly claims that he continues to be denied adequate process in relation to his continued and indefinite incarceration at ADX. *Id.* at 12. He claims that if the correct level of process had been afforded to him at the outset of his placement at ADX, including information regarding why he was being assigned there, he would have been in a position to challenge that placement in a more meaningful way. *Id.* at 6-7.

The requirements of due process are "flexible and cal[l] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what level of process is due, the Court considers three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Moreover, "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225.

In *Wilkinson*, the Supreme Court found that prisoners had a liberty interest not to be placed in the State of Ohio's supermax prison without sufficient preliminary and ongoing safeguards. *Id.* at 225-30. Those safeguards included notice of the factual basis for their

assignment to the supermax facility and an opportunity for rebuttal. The Court was also persuaded that adequate process was provided given that the decision passed through multiple levels of review prior to becoming final, and upon placement in the state supermax facility, the placement was reviewed again within thirty days, and then annually thereafter. Instructive to this Court is the fact that the notice and multi-level review safeguards discussed in *Wilkinson* were specific to placement and continued confinement at the supermax facility, and do not appear to be related to the standard administrative grievance process most prison facilities provide for ordinary disputes regarding conditions of confinement.

Here, the "private interest" that is implicated is the deprivation of Plaintiff's constitutional liberty interests, specifically his interest in avoiding placement at ADX. While his interest is necessarily curtailed due to his incarceration, such interest is not left at the jailhouse door and forever surrendered. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). As in *Wilkinson*, the Court finds that Plaintiff has sufficiently alleged that he has a plausible liberty interest in avoiding placement at ADX.

Regarding the risk of an erroneous deprivation of Plaintiff's "private interest," Plaintiff contends that he was not provided notice of the basis for his placement at ADX or an opportunity to be heard prior to that placement. He asserts that had he been given an opportunity to dispute placement by "present[ing] evidence and mak[ing] a statement [he] would not have been sent to ADX." *Complaint* [#3] at 7. Without notice of the reasons for placement or an opportunity to contest such placement, I find that Plaintiff has pled sufficient facts to suggest that the risk of the erroneous deprivation of a liberty interest was high. Further, I find that Plaintiff has sufficiently pled that utilizing certain procedural

safeguards, such as providing a prisoner with the factual basis for his placement or advance notice and an opportunity for objection, would likely have mitigated the risk of erroneous deprivation.

Finally, regarding the Government's interest, it cannot be denied that the Government has a significant interest in managing its prison facilities and maintaining order among its personnel and inmates. *See Wilkinson*, 545 U.S. at 227. However, at this stage of the proceedings, the validity of such an interest in relation to Plaintiff's placement has not been sufficiently detailed. As such, at present, this factor is outweighed by the private interest involved and the risk of erroneous deprivation of that interest.

At this stage of the proceedings, I find that Plaintiff has asserted a plausible deprivation of a liberty interest and has sufficiently called into question the level of process that he was provided prior to his incarceration at ADX. Further, to the extent that Defendant Wiley[7] seeks the protection of qualified immunity in relation to this claim, the existence of the holding in *Wilkinson* – i.e., that placement at the State of Ohio's super maximum prison, without adequate procedural protections, violates an inmate's liberty interest – prohibits dismissal pursuant to qualified immunity at this time. *See id.* at 220-24; *see generally Thompson*, 2008 WL 901570, at *8 (rejecting application of qualified immunity for placement in segregation that occurred after *Wilkinson*). Here, Plaintiff was placed at ADX after the holding in *Wilkinson* was entered, and Plaintiff alleges that his conditions are similar to those at issue in *Wilkinson*. Upon discovery and more detailed

---

[7] Because the Court recommends that the suit against Defendants Lappin and Nalley in their individual capacities be dismissed for lack of personal jurisdiction, the qualified immunity analysis is limited to Defendant Wiley.

facts of the case coming to light, Plaintiff's conditions may be sufficiently distinguishable from those at issue in *Wilkinson* such that qualified immunity may be appropriate at a later stage of the case. *See, e.g.*, *Jordan*, 191 Fed. Appx. at 652. At this time, however, "such distinctions cannot be reconciled in the context of a motion filed under Fed. R. Civ. P. 12(b)(6)." *Blevins v. Reid*, No. 06-cv-00969-MSK-KMT, 2008 WL 2428941, at *11 (D. Colo. June 12, 2008) (unpublished decision).

> This is not to suggest that, at the summary judgment stage, the Plaintiff will continue to be able to overcome a claim of qualified immunity. At summary judgment, the deference afforded to general allegations in pleadings in replaced by a more searching inquiry into whether the Plaintiff can actually prove facts that would, for example, equate the conditions of his confinement with those of *Wilkinson*. If the Plaintiff fails to do so, the Defendants will be entitled to judgment on qualified immunity grounds.

*Georgacarakos v. Wiley*, 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *15 n.12 (D. Colo. Sept. 12, 2008) (unpublished decision). Therefore, Defendant Wiley is not entitled to qualified immunity at this stage.

Finally, to the extent that Defendant Wiley contends that this claim should be dismissed against him for lack of personal participation, this argument lacks merit. Plaintiff clearly attributes conduct to Defendant Wiley in his complaint where he alleges that Defendant Wiley "agreed to accept [Plaintiff] knowing [he did not have a] disciplinary conviction or the fact that [he] had [not] been afforded due process hearing or served notice of intended transfer to supermaximum segregation . . . ." *Complaint* [#3] at 5. Further, although Plaintiff does not explicitly contend that Defendant Wiley was involved in the decision to transfer Plaintiff to ADX, Plaintiff does contend that "the acts of Defendants" violated his Fifth Amendment rights. *Id.* at 4. Moreover, giving Plaintiff the benefit of liberal pleading interpretation, the Court interprets Plaintiff's complaint to suggest that Defendant

Wiley, as the warden at ADX, has some control over the placement and continued confinement of inmates at his facility. While discovery may ultimately reveal that this is not the case, the Court finds that Plaintiff has minimally alleged the personal participation of Defendant Wiley to survive this stage of the proceedings.

To the extent that Plaintiff seeks injunctive relief against Defendants in their official capacities and monetary damages against Defendant Wiley in his individual capacity, this claim should survive. Accordingly, the Court recommends that Defendants' Motion be **denied** as to Claim I.

### D. Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiffs' Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted).

As to the subjective component, the Court considers whether Defendants intended the deprivation, i.e, acted with deliberate indifference to the harm that could result.

Deliberate indifference can only be proved by showing that Defendants "kn[ew] of or disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

Plaintiffs' complaint fails to satisfy both the objective and subjective components. As a preliminary matter, Plaintiff's alleged injury is entirely speculative. In his complaint, Plaintiff alleges that he will be in danger at some point in the future if he is stepped down to a less-restrictive unit. *Complaint* [#3] at 8. Defendants argue that "Plaintiff's claim, which is based on some future hypothetical and speculative housing scenario, fails to state an Eighth Amendment claim." *Motion* [#163] at 16. Defendants further represent that Plaintiff is not scheduled to be stepped down, and if he is ever eligible in the future, "BOP will ensure that he is not housed with any inmates from whom he has separation assignments." *Id.* at 15-16.

While a situation "where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by separating the prisoner from other inmates who previously have attacked him . . . or providing adequate safety," may constitute an Eighth Amendment injury, these circumstances are not present here. *See Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996). As discussed below, Plaintiff's current conditions of incarceration impose no dangers of harm. The only danger he raises is too speculative and remote to assert a cognizable injury. *See Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-61 (1992).

Considering whether Plaintiff's current conditions of incarceration objectively place him in danger of serious bodily injury, the complaint alleges no plausible scenario to suggest that Plaintiff is presently in danger. Plaintiff is confined alone and does not have access to other inmates. When he takes his recreation, this, too, is done alone. Moreover,

Plaintiff makes no plausible allegation that his basic physical requirements are not currently being met, i.e., food, shelter, clothing, and safety.  As such, Plaintiff's complaint, as it is based on speculative events that may occur at some point in the future, "shows neither an 'unquestioned and serious deprivation of basic human needs,' nor intolerable or shocking conditions."  *Hill*, 75 Fed. Appx. at 721 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Put simply, Plaintiff has failed to allege the current deprivation of a basic human need.  Even if he had satisfied his burden of pleading an objective injury, he has failed to plead a subjective violation.  Plaintiff is correct that he need not wait to be assaulted to seek Court intervention or to prove the subjective element of his alleged constitutional deprivation.  *See Farmer*, 511 U.S. at 845.  However, Defendants' alleged subjective indifference can only "be determined in light of [their] *current* attitudes and conduct."  *Id.* (emphasis added).  Here, as pled by Plaintiff, Defendants have placed Plaintiff in the general population unit and shielded him from interaction with other inmates.  There is no allegation that Plaintiff has been injured or attacked by other inmates or that Defendants' current conduct has led to any harm to Plaintiff.  Accordingly, there are no plausible allegations contained in Plaintiff's complaint to infer that Defendants "were at the time the suit was filed, . . . knowingly and unreasonably disregarding an objectively intolerable risk of harm."  *Id.*

Further, the Court notes that whether Plaintiff's current conditions of confinement place him in imminent danger of harm has already been litigated.  District Judge Wiley Y. Daniel conducted a two-day hearing involving allegations that Plaintiff was in imminent danger.  *See Stine v. Wiley*, No. 06-cv-02105-WYD-PAC, 2007 WL 201251, at **2-3 (D.

Colo. Jan. 24, 2007) (unpublished decision).  Judge Daniel found "that Plaintiff is not incarcerated under conditions posing a substantial risk of harm and is not in immediate danger of being harmed by other inmates.  While Plaintiff has demonstrated that he is or may be targeted by the AB due to information he either provided or offered to provide in a recent trial involving several high-ranking AB members, he has not shown a presently existing threat from the AB."  *Id.* at *3.  Moreover, Judge Daniel noted that none of the Aryan Brotherhood gang members Plaintiff has testified against are currently housed at ADX.  *Id.* at *2.  Similar findings have been made here in resolution of Plaintiff's multiple motions for preliminary injunction regarding his present conditions of incarceration [Docket Nos. 36, 175, 198].

The Court finds that Plaintiff has failed to state a claim that he is or will suffer an objectively serious injury or that Defendants knew of or disregarded an excessive risk to Plaintiff's safety.  Because Plaintiff has failed to plead that Defendants violated a constitutional right, it is unnecessary to consider whether Defendant Wiley is entitled to qualified immunity or whether Plaintiff is entitled to the injunctive relief sought pursuant to this claim.  Accordingly, the Court recommends that Defendants' Motion to Dismiss be **granted** as to Claim II.

### IV.  Conclusion

For the reasons stated above, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED in part and DENIED in part**.  The Court summarizes its Recommendation as follows:

(1) All claims should be dismissed against Defendants Lappin and Nalley in their individual capacities;

(2) Claim II should be dismissed; and

(3) Claim I should survive to the extent that it asserts a claim for injunctive or nonmonetary relief against Defendants in their official capacities and a claim for monetary relief against Defendant Wiley in his individual capacity.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  October 21, 2008

BY THE COURT:

 s/ Kristen L. Mix_____
United States Magistrate Judge
Kristen L. Mix