IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01839-WYD-KLM

MIKEAL GLENN STINE

      Plaintiff,

v.

HARLEY LAPPIN, Director B.O.P.,
MICHAEL NALLEY, Regional Director B.O.P., and
RON WILEY, Warden ADX Supermax,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION TO DISMISS AND DENY PLAINTIFF'S MOTION FOR INJUNCTION

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on **Defendants' Motion to for [sic] Dismissal Pursuant to Rule 41 and 28 U.S.C. § 1915** [Docket No. 258; Filed February 11, 2009] ("Motion to Dismiss") and **Plaintiff's Motion for Injunction/with Evidentiary Hearing/and Request for Expedited Consideration** [Docket No. 304; March 13, 2009] ("Motion for Injunction").  As will be discussed at length below, Plaintiff failed to respond to Defendants' Motion to Dismiss despite multiple opportunities to do so.  Defendants filed a Response to Plaintiff's Motion for Injunction on April 2, 2009 [Docket No. 313], but Plaintiff did not file a reply.  Because the Court became concerned during the briefing of these Motions that the Court was not receiving mail from Plaintiff, the Court set the matter for evidentiary hearing on May 22, 2009 [Docket Nos. 326 & 332].  The Motions are now ripe for a determination.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the Motions

have been referred to this Court for recommendation. The Court has reviewed the relevant pleadings, the case record and testimony and exhibits presented at the evidentiary hearing. For the reasons set forth below, the Court recommends that the Motion to Dismiss [#258] be **GRANTED** and that Plaintiff's case be **DISMISSED** pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i). I further recommend that Plaintiff's Motion [#304] be **DENIED** and that Plaintiff be **enjoined from filing future *pro se* lawsuits in this District** pursuant to similar procedures set forth in *Ketchum v. Cruz*, 775 F. Supp. 1399, 1406-08 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992) and *Penk v. Huber*, No. 07-cv-00607-WYD-MEH, 2007 WL 2908425 (D. Colo. Oct. 3, 2007) (unpublished decision).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

By way of providing context to the Court's Recommendation, the following explains the factual and procedural background regarding Plaintiff's case. Plaintiff, who is proceeding *pro se*, is a prisoner at the federal government's maximum-security prison, ADX Florence ("ADX"). Plaintiff filed the present action in August 2007 and was given leave to proceed *in forma pauperis* [Docket Nos. 3 & 22]. Plaintiff alleges that his transfer to and confinement at ADX constitute atypical punishment in violation of his right to due process pursuant to the Fifth Amendment.[1]

Since the filing of Plaintiff's Complaint, Plaintiff has filed thirteen motions for preliminary injunctive relief [Docket Nos. 6, 12, 19, 21, 49, 66, 71, 78, 93, 184, 247, 249 &

---

[1] Plaintiff was initially proceeding with a co-Plaintiff, Raymond Oecshle. Mr. Oecshle has voluntarily dismissed his claims [Docket No. 221] and, as will be discussed later, has accused Plaintiff of filing false pleadings on the record [Docket No. 330-3]. Plaintiff's case also initially contained an Eighth Amendment claim which has been dismissed [Docket No. 254].

304].  All but Plaintiff's pending Motion for Injunction have been denied.[2]  At the time Defendants filed their pending Motion to Dismiss, Plaintiff had also filed approximately ninety pleadings requesting relief, nearly all of which have been denied.  *See Motion to Dismiss* [#258] at 2.  Since that time, Plaintiff has filed approximately twenty-five motions or requests, the majority of which have been denied.  In addition to Plaintiff's Motion for Injunction, two appeals of my decisions to the District Court [Docket Nos. 267 & 302] and a Motion to Compel [Docket No. 314] remain pending.

Plaintiff has also sent several letters to the Court and/or defense counsel Amy Padden which, because of their offensive and threatening nature, have not been docketed and are on file with Chambers.  *Letter to Kristen L. Mix* dated 12/29/2008; *Letter to Deborah Locke* dated 12/31/2008; *Letter to Kristen L. Mix* received on 2/23/2009 (on file with Chambers).  Finally, Plaintiff has sent at least one letter to then President-elect Barack Obama accusing the Court and defense counsel of conspiring against him and threatening harm.  *Letter to Barack Obama* dated 11/17/2008 (on file with Chambers).

The majority of the filings referenced above provide the basis for Defendants' Motion to Dismiss at issue here.  *See Motion to Dismiss* [#258] at 2-12.  Plaintiff failed to respond to the Motion to Dismiss within the deadline set by the Local Rules.  The Court has since learned that from January 7, 2009 to February 19, 2009, Defendants were withholding Plaintiff's legal mail while awaiting approval from Bureau of Prison's regional counsel to put Plaintiff on special legal mail status, 28 C.F.R. § 540.18, as a result of his threatening

---

[2] The Court notes that Plaintiff has actually filed twenty motions for injunctive relief. Seven were denied without prejudice, and Plaintiff was permitted to consolidate the allegations contained therein in a single pleading [Docket No. 299].  Those allegations are now contained in Plaintiff's Motion for Injunction at issue here.

letters sent at the end of 2008 [Docket No. 278].  *Hearing Tr.* [#339] at 120:22-:25.  While

the Court does not condone Defendants' unilateral decision to delay sending Plaintiff's legal

mail for this month-and-a-half time period, particularly because such conduct does not

appear to be authorized by any regulation or statute,[3] Defendants' conduct does not excuse

Plaintiff's behavior throughout this case.  Moreover, to the extent that Defendants' conduct

is not ongoing, even if improper, it cannot form the basis for any injunctive relief sought by

Plaintiff.  *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005); *see also*

*Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego*

*County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because

plaintiffs seek declaratory and injunctive relief only . . . it is insufficient for them to

demonstrate only a past injury.")).

However, soon after Defendants assert that they resumed normal transmission of

Plaintiff's mail, Plaintiff and other inmates began filing pleadings and letters accusing

Defendants of withholding, and even destroying, Plaintiff's mail.  A timeline of events

relevant to this matter is set forth below:

**Early Jan. 2009** – The Court received two pleadings from Plaintiff about his erratic

mental state and desire to kill people [Docket Nos. 246 & 248].

**Early Jan. 2009** – The Court received a letter from Plaintiff threatening and making

scandalous allegations about the Court and defense counsel (on file with Chambers).

Pursuant to this letter, and those sent by Plaintiff which contained threatening and offensive

---

[3] The Court knows of no authority authorizing Defendants to take this action while awaiting approval from regional counsel to place Plaintiff on special legal mail status, nor have Defendants cited any authority.

statements directed toward defense counsel and ADX attorney Deborah Locke, the United States Marshal Service undertook an investigation into whether Plaintiff had the means or connections to carry out his threats.

**Jan. 7, 2009** – Defendants began withholding all of Plaintiff's outgoing mail, including legal mail [Docket No. 278]. *Hearing Tr.* [#339] at 120:22-:25.

**Jan. 7, 2009** – The date of filing of the last pleading filed by Plaintiff until February 23, 2009 [Docket No. 249].

**February 11, 2009** – Defendants filed a Motion to Dismiss as a sanction [Docket No. 258].

**February 19, 2009** – The Court received a letter from ADX inmate Luke Preacher indicating that Plaintiff's mail was being withheld [Docket No. 261]. Mr. Preacher is a co-plaintiff with Plaintiff in another case pending in this District, 09-cv-00278-CMA-MEH. Although prior to filing of that case Plaintiff had already accumulated at least three strikes to prevent him from proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(g), Mr. Preacher paid the filing fee.

**February 19, 2009** – Defendants received permission to place Plaintiff on special legal mail status and stopped withholding Plaintiff's outgoing mail [Docket No. 278]. *Hearing Tr.* [#339] at 120:22-:25.

**February 23-27, 2009** – The Court received and docketed all of Plaintiff's withheld mail, some of it dating back to January 8, 2009. Nearly twenty withheld pleadings were docketed in this case, and a similar number were docketed in several of his other pending cases, 08-cv-02203-WYD-KLM and 09-cv-00164-WYD-KLM.

**February 23, 2009** – The Court received a letter in an envelope addressed by Plaintiff.  Because the letter contained threatening language directed at the Court, it was not docketed (on file with Chambers).

**March 3, 2009** – The deadline for Plaintiff to respond to Defendants' Motion to Dismiss.  Plaintiff did not respond.  Instead, he filed a motion for an extension of time [Docket No. 290].

**March 4, 2009** – The Court extended the time for Plaintiff to respond to Defendants' Motion to Dismiss [Docket No. 292].  The new deadline was April 3, 2009.  Again, Plaintiff did not respond.

**March 13, 2009** – The Court received Plaintiff's Motion for Injunction regarding the previous withholding of his mail which alleged that "if relief is not granted, the Defendants will continue to withhold Plaintiff's outgoing legal mail for days, weeks and even months . . . ."  *Motion for Injunction* [#304] at 6.  The Court notes that since the filing of Plaintiff's Motion and through June 25, 2009, Plaintiff has filed nine pleadings in this case (including a motion to compel); six pleadings in 08-cv-02203-WYD-KLM; seventeen pleadings in 09-cv-00278-CMA-MEH (including three motions seeking injunctive relief); two pleadings in a case that has been closed since May 9, 2007, 06-cv-02105-WYD-PAC; and a new habeas petition pursuant to 28 U.S.C. § 2241, 09-cv-00933-BNB.

**March 30, 2009** – The Court received a letter from Plaintiff indicating that Defendants continue to withhold his mail and that some of his mail is being destroyed [Docket No. 312].

**April 15, 2009** – After Plaintiff did not respond to Defendants' Motion to Dismiss

within the extended deadline to do so, the Court directed each party to file a status report regarding the current status of Plaintiff's incoming and outgoing mail [Docket No. 316]. Plaintiff did not respond. Defendants responded that since mid-February, none of Plaintiff's mail was being unnecessarily delayed and none had been withheld or destroyed [Docket No. 321]. *Affidavit of Kelly Dell* [#321-2] at 3.

**April 28, 2009** – The Court ordered Plaintiff to show cause why his case should not be dismissed pursuant to Defendants' Motion to Dismiss and for failure to comply with Court Orders [Docket No. 319]. The Court also extended the time for Plaintiff to respond to Defendants' Motion to Dismiss. Again, Plaintiff did not respond.

**May 5, 2009** – The Court received letters from ADX inmate Damani Nantambu indicating that Plaintiff's mail was being withheld [Docket Nos. 324 & 325]. Mr. Nantambu is also Plaintiff's co-plaintiff in 09-cv-00278-CMA-MEH.

**May 8, 2009** – The Court set a hearing for May 22, 2009 to address the status of Plaintiff's mail [Docket No. 326]. The Court directed Plaintiff to bring a copy of his response to Defendants' Motion to Dismiss to the hearing.

**May 14, 2009** – The Court received a letter from ADX inmate Ronnie Beverly indicating that Plaintiff's outgoing mail was being withheld [Docket No. 328].

**May 21, 2009** – The Court received a motion from Defendants requesting that the Court strike the inmate letters filed on behalf of Plaintiff [Docket No. 330]. Attached to Defendants' motion is a letter from ADX inmate Shawn Williams to Ms. Locke, claiming that Plaintiff asked him to be a witness at the hearing on May 22, 2009 and to lie on his behalf [Docket No. 330-4]. Mr. Williams also claimed that Plaintiff intended to have other ADX

inmates lie for him at the hearing and "set up a slew/bunch of ADX officials/staff." Defendants also attached a letter from ADX inmate Raymond Oechsle that they received close in time to when Mr. Oechsle voluntarily dismissed his claims from this case [Docket No. 330-3]. In the letter, Mr. Oechsle addressed Plaintiff's willingness to lie to the Court, forge documents, and have others lie on his behalf. Finally, Defendants attached two witness lists for the May 22, 2009 hearing prepared by Plaintiff; the first listed Mr. Williams as a witness for Plaintiff and the second replaced Mr. Williams with Mr. Preacher [Docket Nos. 330-2 & 330-5].

**May 22, 2009** – At the May 22, 2009 hearing, Plaintiff called three inmate witnesses to testify on his behalf: (1) Mr. Preacher; (2) Mr. Gambina; and (3) Mr. Nantambu. Plaintiff was also questioned by the Court and cross examined by defense counsel. Defendants called two witnesses: (1) Richard Madison (Plaintiff's case manager from March 18, 2009 to May 15, 2009); and (2) Kelly Dell (the ADX staff member who handles all of Plaintiff's outgoing mail once it reaches the ADX mail room). The Court summarizes the parties' arguments and testimony as follows:

Of Plaintiff's three inmate witnesses, only the testimony of Mr. Nantambu was relevant to the issue of whether Defendants are presently withholding or destroying portions of Plaintiff's legal mail. Briefly, Mr. Preacher and Mr. Gambina testified only about their knowledge of the withholding of Plaintiff's mail during or immediately prior to the time period when Defendants admit to withholding Plaintiff's mail, e.g., January to mid-February 2009. *See, e.g.*, *Hearing Tr.* [#339] at 8, 13 (Mr. Preacher); 22, 26 (Mr. Gambina). Because the Court is already aware that ADX officials were withholding Plaintiff's mail during this time period while they were awaiting approval of special legal mail status, this testimony is not

8

relevant to the issue of whether Plaintiff's legal mail is *currently* being withheld or destroyed.

Further, much of Plaintiff's testimony regarding the withholding and alleged destruction of his mail related to the January to mid-February time period and is equally irrelevant to the issue of how ADX officials are *currently* handling Plaintiff's legal mail.  *See, e.g.*, *id.* at 65-68; 138-42; *see also id.* at 143:12-144:6.  The relevant portions of Mr. Nantambu's and Plaintiff's testimony are described below.

### **Damani Nantambu**

(1) He testified that prior to his appearance at the hearing, he received a threat from an ADX staff member, Officer Manspeaker (who is not a named party), about testifying on Plaintiff's behalf.  *Id.* at 36:8-:19.  He believes that due to his support of Plaintiff, ADX officials have been preventing him from having paper, recreation, library access, food, etc. *Id.*  He also testified that ADX officials have recently dubbed him as Plaintiff's "puppy dog." *Id.* at 36:18-:19, 36:24-37:2.

(2) He initially testified that Plaintiff told him about a conversation he had with Defendant Ron Wiley (ADX warden) regarding Plaintiff's mail.  *Id.* at 43:19-44:9.  He later claimed that he heard this conversation personally.  *See id.* at 61:18-:22.  The gist of the conversation is that Defendant Wiley allegedly told Plaintiff that even if ADX staff was throwing Plaintiff's mail in the trash, they have good reason to do so given Plaintiff's lawsuits against him and his staff.  *Id.* at 46:19-47:2; 62:24-63:25.

(3) He testified that during the week of May 18, 2009, he heard Defendant Wiley tell Plaintiff that he gives the orders at ADX, and that he won't take orders from the Court.  *Id.* at 46:22-47:2.

(4) He testified that ADX officials impose paper, hygiene, and library restrictions on him and Plaintiff at will.  *Id.* at 53.

(5) He testified that sometime in April 2009, he heard ADX officers tell Plaintiff that he was on mail restriction and that any mail could be thrown in trash.  *Id.* at 56:20-57:3. He testified that in response to the conversations he overheard, he sent a letter to the Court indicating that Defendants were withholding Plaintiff's mail.  *Id.* at 61:12-62:23.   While Plaintiff asked him to write on Plaintiff's behalf, the letter was based on conversations Mr. Nantambu allegedly heard between Plaintiff and Defendant Wiley, Officer Manspeaker or ADX officials.  *Id.*

**Plaintiff Stine**

(1) He testified that he tried to send his response to Defendants' Motion to Dismiss to the Court six times, but ADX officials destroyed each response.  *Id.* at 73:13-74:7. He claimed that he kept detailed mail logs that show when he mailed his response to Defendants' Motion to Dismiss, which is also allegedly supported by USPS track and confirm slips he retained.  *Id.* at 69-71; *Plaintiff's Exs.* 11 & 12.[4]  Although the Court instructed him in writing to bring a copy of his response to the Motion to Dismiss to the hearing [Docket No. 326], he testified that he gave his only copy to an ADX official for mailing before the hearing and neglected to keep a copy for himself.  Plaintiff could not

---

[4] The Court has reviewed Plaintiff's mail log exhibits and notes that although they purport to convey a contemporaneous list of the mailings sent by Plaintiff over a period of time, the exhibits do not have the earmarks of documents containing entries made on an event-by-event basis.  Rather, the documents appear to have been created in one sitting, meaning there are no deviations in penmanship, changes in the thickness of the handwriting, or similar detail suggesting that the documents were truly created contemporaneously with Plaintiff's mailings. Moreover, even if the mail logs reflect an accurate depiction of Plaintiff's mailings, they are incomplete and cover only the time period from March 9, 2009 to May 15, 2009.

remember the name of the official he allegedly provided the response to for mailing. He admitted that he was on notice to bring a copy to the hearing and that he had retained a copy the five previous times when he allegedly mailed the response to the Court. *Hearing Tr.* [#339] at 73:16-:20; 74:2-:22; 96:20-98:8.

(2) He testified that he sent multiple pleadings that the Court allegedly did not receive. *Id.* at 71-74; 81-93. The Court notes that the majority of the pleadings identified by Plaintiff were received: (1) Motion for Protective Order (received) [Docket No. 287 in this case and Docket No. 194 in 07-cv-02203-WYD-KLM]; (2) Motion to Compel (received) [Docket No. 314]; (3) response to Defendants' Motion to Dismiss (not received); (4) letters about his mail (received) [Docket Nos. 261, 312, 324, 325 & 328]; (5) Motion for Preliminary Injunction (received) [Docket No. 304]; (6) Motion for Summary Judgment (not received in this case, but received in 07-cv-02203-WYD-KLM) [Docket No. 173]. Plaintiff claimed that he failed to keep copies of any of the "missing" pleadings.

(3) He testified that he mailed objections to my Recommendation to dismiss his case in 08-cv-00164-WYD-KLM. *Hearing Tr.* [#339] at 78-79, 92. The Court did not receive any objections by Plaintiff to that Recommendation. Despite his alleged making of objections, Plaintiff stated that he is willing to voluntarily dismiss that case because he does not have "the time . . . to comply" and is no longer interested in litigating the issues raised therein. *Id.* at 78:20-79:1; 92:12-:20. The Court notes that since the hearing, the parties have filed a stipulation to dismiss Plaintiff's case with prejudice and 08-cv-00164-WYD-KLM is now terminated [Docket No. 173].

(4) Plaintiff testified that he was not able to explain why the Court receives the pleadings he mails regarding his other pending case against ADX officials, 09-cv-00278-

CMA-MEH.  *Hearing Tr.* [#339] at 79:5-:20.

(5) On cross examination, Plaintiff testified that he did not remember when he first sent his response to Defendants' Motion to Dismiss to the Court.  *Id.* at 85:20-86:20.  He also claimed that he did not remember what the response said or any arguments he raised. *Id.* at 87:8-88:23.  He claimed that he thought it was between 90-100 pages long with exhibits.  *Id.* at 86-87.  He also claimed that he did not remember the arguments he made in a Motion for Summary Judgment he purportedly mailed, but he thought he raised arguments pursuant to *Wilkinson v. Austin*, 545 U.S. 209 (2005).  *Hearing Tr.* [#339] at 88-92.  The Court notes that this case was cited extensively in my Recommendation on Defendants' first motion to dismiss Plaintiff's case [Docket No. 222].

As noted above, Defendants called two witnesses at the May 22, 2009 hearing:  (1) Richard Madison (Plaintiff's case manager); and (2) Kelly Dell (ADX mail room staff).  The relevant portions of Mr. Madison's and Ms. Dell's testimony are described below.

**<u>Richard Madison</u>**

(1)  He testified that one of his responsibilities while serving as Plaintiff's case manager was to pick up Plaintiff's legal mail and deliver it to the mail room.  *Hearing Tr.* [#339] at 99-101.  In relation to legal mail, he examined the mail for contraband, then gave it to Plaintiff to seal.  He then took the mail to the ADX mail room.  He testified that Defendant Wiley is not involved in this process.  *Id.* at 101:11-:13.

(2)  He testified that he has never thrown away any of Plaintiff's mail.  *Id.* at 101:14-102-:2.  On cross examination, he admitted that he is not the only ADX official who is authorized to pick up Plaintiff's legal mail.  *Id.* at 110:14-11:24.  He testified that any unit team member on Plaintiff's cell range may pick up Plaintiff's mail, but he claimed not to

12

have any knowledge about whether others did in fact pick up Plaintiff's mail.  *Id.*

(3) He testified that it is difficult for inmates to hear from cell to cell on the A range (where Plaintiff and Mr. Namtambu are housed in ADX) because the inmates are almost never quiet.  *Id.* at 107:14-108:1.

(4) He testified that in all of Plaintiff's legal mail he reviewed from March 18, 2009 until May 15, 2009, he did not recall ever seeing a response to Defendants' Motion to Dismiss.  *Id.* at 99:17-:20; 111:7-:8; 109:19-110:8.  By contrast, during the time period when Mr. Madison was Plaintiff's case manager, Plaintiff testified that he tried to mail copies of his response to the Motion to Dismiss to the Court on three occasions.  *Id.* at 70:1-:4; 71:24-74:7.

### **Kelly Dell**

(1) She testified that she has handled Plaintiff's mail, including all of his legal mail, since his transfer to ADX.  *Id.* at 114:14-:17; 120:4-:9.

(2) She testified that when she receives Plaintiff's legal mail from his case manager, it is sealed.  *Id.* at 115:22-116:21; 129:1-:18.  Given Plaintiff's special legal mail status, she contacts the addressee for permission to open the mail for the purpose of screening it for threats.  *Id.* at 116:22-117:8.  After she reads the mail, she reseals and mails it that day. *Id.*  If the addressee does not give permission for the mail to be opened, the legal mail is not read and is then mailed.  *Id.* at 117:9-:13.  She testified that Defendant Wiley is not involved in this process.  *Id.* at 118:1-:5.

(3) She testified that she has never destroyed Plaintiff's legal mail.  *Id.* at 117-118. She also claimed that she has never rejected or confiscated any mail sent to the Court, either before or after Plaintiff was placed on special legal mail status.  *Id.* at 118:16-120:1;

129:18-:20; 131:21-:25.

(4) She testified that she withheld Plaintiff's legal mail from Jan. 7, 2009 to Feb 19, 2009. *Id.* at 120:22-:25.

### Plaintiff's Closing Arguments

Plaintiff argued that the validity of his special legal mail status is questionable, and that ADX officials had no authority to withhold his legal mail while such status was being sought. *Id.* at 137:8-139:20; 140:5-:10; 141:23-142:25. He argued that unnamed ADX officials continue to pick up his mail, but the Court does not receive it. *Id.* at 139:20-140:4 In a case pending in the Central District of California, Plaintiff claimed that discovery sanctions were imposed against him by the Court due to Defendants' withholding of his mail.[5] *Id.* at 68:22-69:11; 140:2-:4.

### Defendants' Closing Arguments

Ms. Padden argued that there is no credible evidence that Plaintiff's legal mail has been confiscated or destroyed. *Id.* at 143:8-:11; 146:25-147:3. She did not dispute that Plaintiff's legal mail was withheld from January to mid-February 2009, but argued that there is no direct evidence that any of the delayed mail, or Plaintiff's legal mail thereafter, was not received by the Court. *Id.* at 143:12-:18. She argued that none of Plaintiff's witnesses

---

[5] Plaintiff filed a civil rights action in the Central District of California which involves alleged First, Fifth and Eighth Amendment violations, 5:08-cv-00251-RGK-MLG. The Court has reviewed the docket in that case and has been unable to locate an order imposing sanctions upon Plaintiff. Moreover, I note the lenience of the Magistrate Judge presiding over that case, Hon. Marc L. Goldman, in that Judge Goldman credited Plaintiff's contention that Defendants were delaying Plaintiff's mail from January to mid-February 2009 and extended Plaintiff's deadline to respond to outstanding discovery requests [Docket Nos. 89 & 91]. In short, I ascertain no prejudice or injury to Plaintiff regarding the status of his mail from the face of the docket and note that Plaintiff's testimony that sanctions have been imposed lacks factual support. *See Hearing Tr.* [#339] at 68:22-69:5.

are credible and that the testimony of Mr. Preacher and Mr. Nantambu should be viewed critically because they are co-plaintiffs of Mr. Stine in another pending case.  In any event, she noted that most of the testimony derived from the witnesses related to the withholding of Plaintiff's legal mail during the time period when ADX officials admit to withholding his mail.  *Id.* at 143:19-144:24.

Ms. Padden also argued that Plaintiff's professed inability to remember the contents of his response to Defendants' Motion to Dismiss or the date when he first mailed it to the Court undermines his credibility.  *Id.* at 144:25-145:13.  She noted that if such a response existed, Plaintiff could have brought it to the hearing.  *Id.* at 145:14-:23.  She argued that the only logical conclusion is that Plaintiff never responded to the Motion to Dismiss and is now attempting to use his special legal mail status and ADX officials' previous withholding of his mail as an excuse to mislead the Court.  *Id.* at 145:23-146:2; 147:8-:13.[6]

Ms. Padden reminded the Court of Plaintiff's history of not responding to dispositive motions when there was a likelihood that they would be granted.  *Id.* at 146:3-:24.  In 07-cv-00121-WYD-KLM, Plaintiff failed to respond to the pending Motion to Dismiss.  *Id.*  In a hearing held in that case, he was also found not to be a credible witness, to have lied under oath, and to have submitted a forged document to the Court.  *Id.*  She contended that Plaintiff's current conduct should be viewed similarly.  Finally, she noted that the dockets in all of Plaintiff's cases belie Plaintiff's testimony that the Court is not receiving his legal mail.  *Id.* at 147:4-:7.

---

[6] The Court notes that since the date of the hearing, Plaintiff has sent three pleadings to the Court [Docket Nos. 336, 340 & 343], two of which were motions which contained inflammatory information and were stricken for lack of relevance and support [Docket No. 342], but the Court has not received Plaintiff's response to the Motion to Dismiss.

## II.  PENDING MOTIONS

As noted above, the matter is before the Court on both Defendants' Motion to Dismiss and Plaintiff's Motion for Injunction.  The Motions are related in that Plaintiff failed to file a response to Defendants' Motion to Dismiss (despite several Court Orders to do so) because he contends that Defendants are unlawfully withholding his mail, including his response.  The alleged withholding of Plaintiff's mail is the subject of Plaintiff's Motion for Injunction.

In support of their Motion to Dismiss, Defendants trace the history of the pleadings filed by Plaintiff in this case and the Court's repetitive warnings that sanctions would result if Plaintiff continued to inundate the Court with frivolous and malicious filings.  The Court organizes the relevant information as follows:  (1) the Court's warnings; (2) Plaintiff's abusive pleadings and letters; (3) Plaintiff's threatening pleadings and letters; (4) Plaintiff's documents of questionable veracity; and (5) Plaintiff's litigious history.

(1)     Plaintiff has been warned at least twelve times by four different judges in this case that his continued filing of pleadings which are frivolous, redundant, malicious or threatening will lead to sanctions, including the dismissal of his case or the imposition of an injunction.  For example, Magistrate Judge Boyd N. Boland found that "[t]he exhibits and letters [filed by Plaintiff] border on being malicious and frivolous and may subject Plaintiff[] to possible sanctions."  *Order* ]#16] at 2.  Senior District Judge Zita L. Weinshienk found that Plaintiff's "continual filing of motions . . . are no more than [his] attempt to inundate the Court . . . ."  *Order* [#36] at 5.  This Court struck several of Plaintiff's pleadings from the docket because they contained false accusations and were abusive [Docket No. 76].  Chief Judge Wiley Y. Daniel warned Plaintiff that "abusive pleadings will result in the imposition

16

of sanctions, including entry of an injunction prohibiting him from filing future pleadings and/or [dismissal]."  *Order* [#240] at 2;

(2)     Plaintiff has sent or filed pleadings and letters which contain malicious, abusive, and offensive language directed at the Court, Defendants, ADX offcials and defense counsel.  Plaintiff accused Judge Boland of "los[ing] his mind" and engaging in the "illegal use of his office" [Docket Nos. 27 & 28].   Plaintiff accused this Court of being "prejudicial and hostile," having a "deep seated favoritism of [Defendants]," "allow[ing] [an] attempted murder to happen,"and being "full of shit" [Docket Nos. 91,  97, 123, 139 & 210]. Plaintiff accused Defendants of being "out of control," committing "malicious acts," and subjecting him to "barbaric and demoralizing treatment" [Docket Nos. 93, 184 & 246]. Plaintiff accused Ms. Padden of "stat[ing] a bald face lie," committing "forgery," being corrupt, and lying to the Court even though her "shit stinks too" [Docket Nos. 120, 190 & 239].  In particularly offensive letters on file with the Court, Plaintiff accused the Court and defense counsel of having an inappropriate relationship.  *Letter to Barack Obama* dated 11/17/2008.[7]  Plaintiff's accusations became even more defamatory in a letter sent to the Court.  *Letter to Kristen L. Mix* dated 12/29/2008.  Plaintiff also sent a letter to an ADX attorney about this case containing inappropriate and maligning language.  *Letter to Deborah Locke* dated 12/31/2008;

(3)     Plaintiff has sent or filed several pleadings and letters which contain threats of harm against the Court, Defendants, ADX officials and defense counsel.  For example,

_____

[7] Interestingly, Plaintiff also accused another Magistrate Judge of having an inappropriate relationship with Ms. Padden.  That accusation was found to be entirely without merit and malicious.  *See, e.g.*, 07-cv-00121-WYD-KLM [Docket Nos. 213 at 3-5 & 192 at 17-18].

17

Plaintiff informed then President-elect Obama: "People wonder why prisoners leave prison with only hate and murderful [sic] thoughts. . . .   Straight out Mr. Obama, I should never be allowed out of prison because my hate for Amy Padden has reach [sic] the point of . . . seeing her die most painful ways." *Letter to Barack Obama* dated 11/17/2008; Docket Nos. 234 & 236.  In an objection filed with Chief Judge Daniel, "Plaintiff states its [sic] very true that he hates not only Amy L. Padden but Magistrate Mix as well" [Docket No. 239].  In a letter sent to the Court, Plaintiff threatened the Court, Defendant Wiley and defense counsel with harm to them and their families.  *Letter to Kristen L. Mix* dated 12/29/2008. In an unsigned letter sent in an envelope written by and addressed from Plaintiff to the Court, the author of the letter conveyed the desire for terrible harm to befall the Court. *Letter to Kristen L. Mix* received on 2/23/2009.  In a letter sent to an ADX attorney, Plaintiff warned her that he would use any means to take action against her and defense counsel. *Letter to Deborah Locke* dated 12/31/009.  In a pleading filed on the docket, Plaintiff stated that he goes "to sleep thinking of ways to murder the ones inflicting [pain] . . . .  I fully believe within the next few days I will have committed murder.  Well Judge Wiley Daniel, its [sic] now reached a point of no return and I've made sure that my family will not let it go . . ." [Docket No. 246];

(4)     Plaintiff has filed multiple pleadings of questionable veracity.  In the earlier stages of his case when he was proceeding with a co-Plaintiff, Plaintiff filed several pleadings which Judges Boland and Weinshienk noted were of questionable authenticity [Docket Nos. 3, 4, 6, 10, 11 & 12].  *See Order* [#16] at 2; *Order* [#22] at 2; *Order* [#26] at 1-2; *Order* [#33] at 1.  Plaintiff filed an alleged declaration from inmate Ronnie Beverly written in Plaintiff's handwriting and signed, in all likelihood, by Plaintiff [Docket No. 142].

18

The Court has examined the signature of Mr. Beverly contained in a letter purported to be filed by Mr. Beverly [Docket No. 328] and notes that the signature in Plaintiff's pleading is not similar to Mr. Beverly's signature in the letter.  Plaintiff filed a motion in his handwriting asking for an extension of time, which was granted [Docket Nos. 194 & 196].  Inexplicably, Plaintiff then filed a motion to strike Docket Nos. 194 and 196, claiming that the earlier motion had not been written by him and was a forgery [Docket No. 199].  Given this Court's overwhelming familiarity with Plaintiff's handwriting, spelling, syntax, and grammar, I rejected Plaintiff's contention that the motion was forged and noted that contrary to Plaintiff's argument, "it [was] highly unlikely that these pleadings were drafted and signed by anyone other than Plaintiff."  *Order* [#202] at 1.  Finally, I note that in Plaintiff's Motion for Injunction, Plaintiff claims that he has never made any threats against the Court and that he "denys [sic] writing alleged letters" [Docket No. 304].  However, there is no doubt that the Court has received letters written in Plaintiff's handwriting, signed by Plaintiff, and sent in envelopes written and addressed by Plaintiff, that contain threats; and

(5)     Plaintiff has a longstanding history of litigious behavior in this District and in other districts across the country.  Plaintiff has filed thirteen cases since October 2006 in this District alone (four of which remain pending), as well as a large number of cases in other federal courts across the country.[8]  Moreover, the Court notes the many Orders that

---

[8] The Court takes judicial notice of the complaint filed by Plaintiff in 08-cv-00298-ZLW, wherein Plaintiff provides his past and current federal lawsuits in what purports to be an exhaustive list [Docket No. 3].  At the time of its filing, Plaintiff had twenty-seven past and present federal actions.  Since that time Plaintiff has filed three additional cases in this District.  These numbers do not also include the number of appeals Plaintiff has filed to date.  In addition to this Court, the Court notes that Plaintiff has filed cases in the Southern District of Texas, District of Arizona, the Western District of Kentucky, the Middle District of Florida, the Eastern District of Florida, the Southern District of Illinois, the Western District of Missouri, the District of South Carolina, the Southern District of California, and the Central District of California.  As

judges of this District have entered addressing Plaintiff's malicious and frivolous filings.[9] As noted above, in this case alone, Plaintiff has been repeatedly warned by this Court, the preliminary review Court and the District Court.  For example, at the inception of his case, Judge Boland twice warned Plaintiff that if he continued to inundate the Court with borderline malicious filings, his case would be dismissed [Docket Nos. 26 & 33].  Further, the Court notes that out of the thirteen cases Plaintiff has filed in this District, he has filed approximately seventy motions for injunctive relief, all of which have been denied as having no merit.  While the quantity of Plaintiff's motions is not necessarily the prevailing concern here, the Court notes that the quality of the motions in almost every instance is lacking, evidencing repeated violations of Fed. R. Civ. P. 11 and the Court's prior Orders.

The Court also notes Plaintiff's history of making false statements, not only on this

---

noted earlier, the Court takes judicial notice that Plaintiff has at least one pending case in the Central District of California which was filed on February 29, 2008, 5:08-cv-00251-RGK-MLG. As a result of the Court's review of Plaintiff's filings across districts, the Court notes that Plaintiff appears to have at least six pending cases:  four in this District, one in the Southern District of Texas, and one in the Central District of California.

[9] The following represent only a sample of Orders that have been issued against Plaintiff that speak to this issue.  In 07-cv-00121-WYD-KLM, the Court denied Plaintiff's motion because it contained "at least one untruthful statement" [Docket No. 212].  The Court also sanctioned Plaintiff for filing unnecessary pleadings [Docket No. 190].  The Court found that Plaintiff had committed "contumacious behavior," had lied under oath, had filed false pleadings, and had submitted a forged document into evidence.  In 07-cv-00799-WYD-KLM, Plaintiff was warned about the "malicious attempts by Plaintiff to inundate the Court with unnecessary filings" [Docket No. 22].  Plaintiff was also sanctioned by this Court for his continued filing of the same motion by striking the redundant documents and requiring that Plaintiff seek leave of the Court before filing any new motion [Docket No. 106].   In 07-cv-01248-ZLW, Plaintiff was cautioned about "his filings [which were] for the most part unnecessary and [were] a malicious attempt to inundate the Court" [Docket No. 12].  In 07-cv-02203-WYD-KLM, the Court twice struck noncompliant pleadings filed by Plaintiff [Docket Nos. 142 & 188].  The District Judge also determined that "Plaintiff cannot ignore warnings of the Court and file [inappropriate pleadings]. . . [which] make[] unfounded and conclusory statements . . ." [Docket No. 102].  Further, the District Judge found objections filed by Plaintiff to be "frivolous" [Docket No. 64].   In 09-cv-00278-CMA-MEH, Plaintiff was warned about his "obligation to file specific, non-frivolous pleadings that comply with both local and federal court rules" [Docket No. 77].

record, but in previous cases.  Plaintiff submitted a forged document into evidence in 07-cv-00121-WYD-KLM.  *Recommendation* [#192] at 17.  Plaintiff also lied under oath at a hearing and in his deposition testimony.  *Id.*  Plaintiff submitted false pleadings in that case [Docket Nos. 44, 113, 122 & 145], in the present case [Docket No. 14], and in 07-cv-00799-WYD-KLM [Docket No. 55].  Further, I note Plaintiff's testimony at the May 22, 2009 hearing where he informed the Court that he had been sanctioned by the District Court for the Central District of California, *Hearing Tr.* [#339] at 68:22-69:5, but no such court order exists.

The Court is also mindful of unsolicited letters received by counsel regarding Plaintiff's willingness to lie to the Court and enlist others to lie on his behalf.  In the Court's estimation, these inmates likely gain very little by playing the role of whistle blower and, in fact, likely subject themselves to ridicule or worse by other inmates.  The Court notes the statements made by Plaintiff's previous co-Plaintiff, Mr. Oecshle, that Plaintiff forged his signature on countless pleadings, filed "bogus declarations," and "is knowingly & intentionally committing a multitude of Federal Crimes [by filing false documents]" [Docket No. 330-3].  The Court also notes the statements made by an inmate Plaintiff intended to call as a witness at the May 22, 2009 hearing, Mr. Williams.  Shortly before the hearing, Mr. Williams informed ADX attorney, Ms. Locke, that "[i]nmate Mikeal Glenn Stine . . . is a liar & fraud . . . and he/Stine wanted me to LIE for him at the upcoming 05/22/09 hearing" [Docket No. 330-4].  He further stated that he "played this inmate Stine to find out the real deal . . . now I know . . . [that he] is planning to get other inmates to lie/testify, etc., for him [including] . . . Luke Preacher, . . . Ralph Gambina, [and] Damonde Nantambul [sic] . . . ."  The credibility of Mr. Oecshle's and Mr. Williams' letters have not been tested.  However,

in relation to Mr. William's letter, the Court notes that the three inmates identified in the letter did testify for Plaintiff at the May 22, 2009 hearing and that Mr. Williams was originally listed by Plaintiff as a witness on his behalf but was removed by Plaintiff from his witness list just prior to the hearing.

The Court treats Plaintiff's false filings and allegations that he solicited others to lie on his behalf very seriously.  In addition, I note that submission of a false document to the Court and suborning perjury are criminal acts.  *See* 18 U.S.C. §§ 401, 1622.  Further, this is not the first time a federal court has addressed Plaintiff's false filings.  The Court takes judicial notice that Plaintiff was previously convicted of criminal contempt for submitting a document found not to be genuine in an attempt to avoid dismissal of one of his cases. *United States v. Stine*, 70 F.3d 121 (table) (9th Cir. 1995) (unpublished decision), *aff'g* No. 94-mc-00044-PGR (D. Ariz. Nov. 28, 1994). The Ninth Circuit found that "Stine did not have a good faith belief that the exhaustion letter was genuine" and affirmed his conviction for criminal contempt.  *Id.*

## III.  THE COURT'S FINDINGS

Considering the information, evidence, testimony, documents, exhibits and pleadings set forth above, the Court finds as follows:

(1)   The testimony presented by Plaintiff at the May 22, 2009 hearing that Defendants are destroying his legal mail was not credible;

(2)   There is no credible evidence that Plaintiff prepared or sent a response to the Motion to Dismiss to the Court;

(3)   Defendants had no authority to withhold Plaintiff's mail from January to mid-February 2009;

(4)     There is no credible evidence that Defendants are currently withholding or destroying Plaintiff's legal mail;

(5)     There is credible evidence that Plaintiff has filed false pleadings on the record;

(6)     Plaintiff has maliciously and falsely accused the Court and defense counsel of improper conduct;

(7)     Plaintiff has threatened and harassed the Court and defense counsel;

(8)     Plaintiff has inundated the Court with meritless and frivolous filings;

(9)     Plaintiff has failed to comply with three Court Orders regarding the filing of his response to the Motion to Dismiss [Docket Nos. 292, 319 & 326]; and

(10)    Plaintiff has failed to comply with at least twelve Court Orders regarding the filing of frivolous, malicious, and abusive pleadings.

## IV.  RECOMMENDATION

In light of the above findings, the Court recommends that several actions be taken to address this matter.

First, the Court recommends that Plaintiff's case be dismissed as a sanction pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i).

Second, the Court recommends that Plaintiff be enjoined from filing future cases in this District.  My recommendations are addressed below.

### A.     Dismissal as Sanction

The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" . . . at issue . . . .'" *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (citation omitted).  In *Ehrenhaus*, the

Tenth Circuit enumerated the factors to be considered when evaluating grounds for dismissal of an action.   The factors are:   "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."  *Id.* at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.,* 167 F.R.D. 90, 101 (D. Colo. 1996).   "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'"  *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921).   Given that Plaintiff is proceeding *pro se*, the Court must carefully conduct its analysis and consider whether "some sanction other than dismissal [with prejudice is appropriate], so that the party does not unknowingly lose [his] right of access to the courts . . . ."  *Nasious v. Two Unknown BICE Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 920 n.3).

The Court notes that the standards for dismissal pursuant to Rule 41(b) are essentially the same as those utilized for discovery violations.  *See Mobley v. McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994) ("[W]e see no principled distinction between sanctions imposed for discovery violations and sanctions imposed for noncompliance with other orders [and] . . . involuntary dismissals should be determined by reference to the *Ehrenhaus* criteria.").  Rule 41(b) authorizes the Court to dismiss Plaintiff's case due to his failure to prosecute his case and failure to comply with Court rules or Orders.  Fed. R. Civ. P. 41(b).  Finally, although Plaintiff is proceeding *pro se*, he is not immune from Rule 41(b) sanctions.  *See, e.g.*, *Steiner v. Concentra Inc.*, 195 Fed. Appx. 723, 727-28 (10th Cir.

2006) (unpublished decision); *Clements v. Chapman*, 189 Fed. Appx. 688, 692-93 (10th Cir. 2006) (unpublished decision).

### 1.      Prejudice to Defendants

I find that Plaintiff's conduct prejudiced Defendants' ability to defend against the accusations lodged by Plaintiff in his Complaint.  In this regard, the Court notes that Plaintiff's abuses have caused Defendants to expend unnecessary resources and time to refute the wholly unsupported accusations lodged against defense counsel.  Defense counsel has also been subjected to unwarranted name calling and threats.  In addition, the large number of meritless or frivolous pleadings filed in this case, to which Defendants were compelled to respond, either via written pleadings or hearing testimony, further justifies the Court's finding of prejudice.  As a result of Plaintiff's actions, including sending threatening letters to the Court and defense counsel, the case has been brought to a virtual standstill and has not progressed with any substance toward trial despite the significant amount of time and effort expended on it by Defendants.  While Defendants' conduct in withholding Plaintiff's mail from January to mid-February 2009 contributed to their burden, and unnecessarily complicated these proceedings, this conduct is outweighed by Plaintiff's overall litigation abuses.

### 2.      Interference with the Judicial Process

I find that Plaintiff's conduct in this case has interfered with the judicial process.  Just as Defendants are burdened by Plaintiff's abuses so, too, is the Court.  The issue here "is respect for the judicial process and the law."  *See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003).  Plaintiff's unconscionable and slanderous accusations and his continued filing of meritless pleadings, despite being warned about such in this case and

25

others, evidences a lack of respect for the Court, Defendants, and the judicial process.  In addition, Plaintiff's incredible testimony at the evidentiary hearing, the unsupported allegations about the status of his legal mail, and the submission of false pleadings also justify the Court's finding of judicial interference.  Moreover, the Court's continual review of Plaintiff's file, the issuance of Orders prompted by Plaintiff's unnecessary and noncompliant filings, and the holding of a hearing to address Plaintiff's unsupported allegations increases the workload of the Court and interferes with the administration of justice.  "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document."  *See Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006) (unpublished decision).

### 3.    Culpability of Plaintiff

Plaintiff has, without any reasonable excuse, invented slanderous allegations regarding the Court, defense counsel, and Defendants and further subjected the same to unwarranted threats, abuse, and accusations.  "The vileness of [P]laintiff's comments speak for themselves."  *Id.*  He also has needlessly inundated the Court with filings and letters, even after being warned by this Court and others that sanctions would result.  In regard to Plaintiff's unsupported allegations about the status of his legal mail, the Court provided Plaintiff with an opportunity to support his allegations and to submit his response to the Motion to Dismiss at the evidentiary hearing.  Instead, he presented irrelevant or incredible testimony and documents and failed to file his response despite several Court Orders requiring him to do so and despite being provided with a unique opportunity to avoid any contact with ADX officials whatsoever prior to filing it, by bringing it to the hearing and

26

transmitting it under the watchful eye of the Court.

Considering the record before the Court, including the docket, the hearing testimony and exhibits, and Defendants' arguments, the Court believes that Plaintiff fabricated the allegation about the current state of his legal mail in an attempt to avoid prosecuting his case after receiving a Motion to Dismiss which he could not overcome. As a result, I must conclude that Plaintiff's conduct, which was perpetrated throughout the course of this litigation, was willful, and that he is therefore responsible for his litigation abuses. *See id.* (noting that plaintiff's continued filing of abusive pleadings, despite warnings about the same, evidenced wilfulness). "This factor virtually compels dismissal." *Id.*

### 4. Advance Notice of Sanction of Dismissal

The fact that Plaintiff was warned repeatedly that he risked dismissal for his litigation abuses in this case and several of his other pending cases makes it clear that Plaintiff knew, or reasonably should have known, that his litigation abuses would ultimately result in dismissal. *See id.* (justifying its decision to dismiss on the various warnings plaintiff received in his present and other cases). The Court also notes that despite warnings given to Plaintiff, he has continued to flood the Court with unnecessary, malicious and false filings, indicating to this Court that warnings (and even dismissals of other cases on similar grounds) do little to deter Plaintiff's abusive conduct.

### 5. Efficacy of a Lesser Sanction

Finally, I conclude that no sanction less than dismissal with prejudice would be effective. Although Plaintiff is proceeding *pro se*, his lack of legal representation does not excuse his abuses here. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (citing *Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978)). *See*

27

*generally Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).  Warnings to Plaintiff have been resoundingly unsuccessful.  In addition, the Court doubts that a monetary sanction would be effective or meaningful to Plaintiff.  In summary, Plaintiff's conduct has been malicious.  He has proceeded without conscience regarding his unsupported accusations.[10]  Moreover, it is clear to the Court that Plaintiff is wholly unconcerned about telling the truth in pleadings and while under oath.  Under these circumstances, no lesser sanction would be effective.  Dismissal of this case with prejudice is the appropriate result.

### B.   Injunction as Sanction

In addition to the sanction of dismissal, the Court is compelled to address the status of Plaintiff's ability to file future *pro se* cases and lodge future baseless accusations in this District.  Plaintiff already has at least four strikes against him pursuant to 28 U.S.C. § 1915(g).[11]  Despite his inability to proceed *in forma pauperis*, Plaintiff has now enlisted the financial aid of other inmates to allow him to proceed undaunted.  *See, e.g.*, 09-cv-00298-CMA-MEH.  Since 2006, Plaintiff has filed thirteen cases in this District, dismissing several of them voluntarily when facing a dispositive motion (but only after much effort was expended by the Court and Defendants).  Excluding those cases that were dismissed on preliminary review, Plaintiff's cases have two things in common:  (1) none has been found to have merit and (2) all have involved vexatious, frivolous and malicious filing of pleadings

---

[10] Plaintiff has also sent letters to Senator John McCain containing unsupported and malicious accusations directed at the Court and defense counsel [Docket Nos. 123 & 139].

[11] The four known strikes were issued in 07-cv-581-PHX-PGR (MHB) (D. Ariz.) where the Court held that Plaintiff's Complaint failed to state a claim, in Civil Action No. 07-cv-00102-ZLW [Docket No. 6] and Civil Action No. 08-cv-00298-ZLW [Docket No. 7] where the Court dismissed Plaintiff's cases as frivolous and malicious, and in 07-cv-00121-WYD-KLM [Docket No. 213] where the Court dismissed his case as malicious.

without legal justification. Although it is clear that Plaintiff believes that he has been treated unfairly by various individuals in the federal prison system, executive branch, and the judiciary, "he has inappropriately used the federal court system as a means to express his displeasure" in an abusive, malicious, and unconscionable manner. *See Penk v. Huber*, 07-cv-00607-WYD-MEH, 2007 WL 2908425, at *2 (D. Colo. Oct. 3, 2007) (unpublished decision). Plaintiff has been frequently warned that his misconduct could lead to an injunction against making future filings [Docket Nos. 76, 236 & 240]. Because it is clear that Plaintiff finds unfairness with every action taken against him, whether real or imaginary, and does not show any signs of deviating from his campaign of harassment, "justice requires this District to follow through with the warning to impose restrictions on his ability to file" future federal lawsuits. *See id.*

The Court has authority to "enjoin litigants who abuse the court system by harassing their opponents" pursuant to 28 U.S.C. § 1651(a). *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989). Indeed, "[t]here is a strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions . . . ." *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986). To this end, "'[e]ven onerous conditions' may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved." *Id.* (quoting *Carter v. United States*, 733 F.2d 735, 737 (10th Cir. 1984)). Because "[n]o one, rich or poor, is entitled to abuse the judicial process," the Court finds that an injunction restricting Plaintiff's filings is appropriate. *See Tripati,* 878 F.2d at 353 (noting that "the right of access to the courts is neither absolute nor unconditional . . . [and] there is no constitutional right . . . to prosecute an action that is frivolous or malicious" (citation omitted)).

"[I]njunctions are proper where the litigant's abusive and lengthy history properly is set forth."  *Id.*  Here, the Court has detailed Plaintiff's history of abusive filings throughout the Recommendation.  In addition, the Court attaches an appendix summarizing Plaintiff's cases filed in this District and the Tenth Circuit Court of Appeals.  "Where a litigant's court access is restricted, guidelines must be set forth so that the litigant is aware of what must be done in order to obtain the court's permission to file an action."  *Cromar v. Railey*, 43 F.3d 1482 (table) (10th Cir. 1994) (unpublished decision).  The restrictions proposed by this Court are set forth below:

Any documents Plaintiff wishes to submit for filing in this District shall be delivered to the Office of the Clerk, United States District Court, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado 80294.  As a prerequisite to filing a *pro se* complaint, **including complaints where Plaintiff is proceeding as a co-plaintiff**, Plaintiff must file **THREE** documents:

**(1) A petition titled, "Petition Pursuant to Court Order Seeking Leave to File a *Pro Se* Action," as directed below.  Plaintiff shall affix a copy of the injunction to the petition.**

The petition must contain the following information:

(a) a statement advising the Court whether any defendant to the lawsuit was a party to, or was any way involved in, any prior lawsuit involving Plaintiff and, if so, in what capacity;

(b) a list of all lawsuits in the United States District Court for the District of Colorado, the United States Court of Appeal for the Tenth Circuit, the United States Supreme Court, as well as any other federal or state court in which Plaintiff was or is a party; the name and citation of each case, if applicable, including jurisdiction; his involvement in each lawsuit; the status of each lawsuit; and the disposition;

(c) a list of all federal or state cases in which a judgment was rendered against Plaintiff, if any; the name and citation of each case; the amount of judgment rendered against him, if any; the amount of the judgment that remains outstanding; and the reasons why the judgment remains outstanding; and

(d) a list of all federal or state cases in which a judgment was rendered in

30

favor of Plaintiff, if any; the name and citation of each case; the amount of judgment rendered in favor of him, if any; the amount of the judgment that remains outstanding; and the reasons why the judgment remains outstanding.

**(2) An affidavit as directed below:**

The affidavit shall be signed under the penalty of perjury, and shall contain the following recitals:

(a) that the complaint or claims Plaintiff wishes to present never before have been raised by him and disposed of by any federal or state court;

(b) that to the best of his knowledge the claim or claims are not frivolous or taken in bad faith; that the claim or claims are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; that the lawsuit is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *See* Fed. R. Civ. P. 11; and

(c) that the claim or claims are not meant to harass any individual or entity.

**(3) A copy of the complaint or claims sought to be filed in this District on the Court's prisoner complaint form.**

The complaint or claims sought to be filed in this district must comply with the injunction, Fed. R. Civ. P. 8, all other provisions contained in the Federal Rules of Civil Procedure, and the United States District Court for the District of Colorado Local Rules of Practice (the "Local Rules of Practice").

***WHILE PLAINTIFF AWAITS APPROVAL OF HIS PETITION, HE SHALL NOT FILE ANY MOTIONS OR OTHER PLEADINGS PERTAINING TO THE PETITION UNLESS DIRECTED TO DO SO.***

***PLAINTIFF IS NOT PERMITTED TO HAVE MORE THAN ONE PETITION PENDING AT A TIME.  IN NO EVENT SHALL PLAINTIFF SUBMIT MORE THAN ONE PETITION PER MONTH.***

**The procedure for review of Plaintiff's intended filings should be as follows:**

Whenever Plaintiff submits a petition for leave to file a *pro se* action, the Clerk of the Court, or designated deputies, will accept the documents, mark them received, and immediately forward them to the preliminary review unit.

The preliminary review unit (*pro se* division), which is currently under the supervision of the Chief District Judge Wiley Y. Daniel, Senior District Judge Zita L.

Weinshienk, and Magistrate Judge Boyd N. Boland, shall decide whether to approve or disprove the petition by considering the following:

(1) whether Plaintiff has complied with the injunction in all particulars;

(2) whether Plaintiff's complaint complies with the Federal Rules of Civil Procedure and Local Rules of Practice;

(3) whether the complaint is frivolous, abusive, harassing, or malicious;

(4) whether the claims raised in Plaintiff's complaint have been raised by him and disposed of by any federal or state court;

(5) whether there has been full compliance with Fed. R. Civ. P. 11, and all pleadings and filings do not violate 28 U.S.C. § 1927;

(6) whether the complaint alleges claims against individuals or entities that may have immunity from suit;

(7) such other reasonable requirements established by the reviewing judge; and

(8) the reviewing judge shall not otherwise address the merits of the complaint.

Plaintiff's failure to comply with the procedures and principles mandated by the injunction shall be sufficient grounds for denying the petition.

As noted in item (5), disapproval of the petition may be founded upon false recitals in any of Plaintiff's filings.  If any false statement is made, Plaintiff may be considered in violation of the injunction and subject to other orders of the reviewing judge, including appropriate sanctions.  The provisions contained in Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 are incorporated into this injunction.

If the reviewing judge enters an order granting the petition, the Clerk of the Court shall cause the complaint and materials to be filed as of the date of the order. The assignment of the case shall be pursuant to the Local Rules of Practice.

The injunction shall not interfere in any way with actions, orders, or judgments of any federal court involving Plaintiff which predate the injunction.

(Taken, in part, from *Ketchum v. Cruz*, 775 F. Supp. 1399, 1406-08 (D. Colo. 1991), *aff'd*,

961 F.2d 916 (10th Cir. 1992)).

## V.  CONCLUSION

I respectfully **RECOMMEND** that Defendants' Motion to Dismiss [#258] be

**GRANTED**, and that Plaintiff's action be **DISMISSED WITH PREJUDICE** pursuant to Fed.

R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i).[12]

I FURTHER **RECOMMEND** that the Order to Show Cause [#319] be made

**ABSOLUTE**.

I FURTHER **RECOMMEND** that Plaintiff be **enjoined from filing future *pro se***

**cases** as set forth above.

I FURTHER **RECOMMEND** that Plaintiff's Motion for Injunction [#304] be **DENIED**.

Plaintiff failed to carry his burden of proving the probability of irreparable harm.  *See*

*Schrier*, 427 F.3d at 1258.  It is well established that "[b]ecause a showing of probable

irreparable harm is the single most important prerequisite for the issuance of a preliminary

injunction, the moving party must first demonstrate that such injury is likely before the other

requirements for the issuance of an injunction will be considered."  *Dominion Video*

*Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations

omitted).  Moreover, I have found that the accusations forming the basis for the Motion,

---

[12] The Court need only provide a brief basis for its recommendation to dismiss Plaintiff's action as malicious.  *See Boag v. MacDougall*, 454 U.S. 364, 365 n.1 (1982).  The Court notes that the egregious conduct which justifies the Court's recommendation for dismissal with prejudice as a Rule 41(b) sanction also fully supports the Court's recommendation to categorize Plaintiff's case as malicious.  *See generally Hawkinson v. Montoya*, 283 Fed. Appx. 659, 662-67 (10th Cir. July 7, 2008) (unpublished decision) (upholding dismissal of case pursuant to both § 1915 and Rule 41(b) based on the same conduct); *Kettering v. Chaves*, No. 07-cv-01575-CMA-KLM, 2008 WL 4877005, at **1, 21 n.4 (D. Colo. Nov. 12, 2008) (unpublished decision) (dismissing plaintiff's case pursuant to § 1915 and Rule 41(b) due to "Plaintiff's pattern of unacceptable and abusive behavior"); *Taylor v. Chicago Police Dep't*, No. 07-cv-5097, 2008 WL 2477694, at *4 (N.D. Ill. June 18, 2008) (unpublished decision) (dismissing plaintiff's case pursuant to § 1915 and Rule 41(b) regarding the same malicious conduct).

namely that Defendants are currently destroying or withholding Plaintiff's mail, are incredible and unsupported by the record.

With that being said, the Court does not ignore Defendants' role in prompting the filing of the Motion for Injunction.  The Court warns Defendants that, without statutory or regulatory support, there is no legal basis for them to take similar action against this Plaintiff or any other inmate.  Nevertheless, Defendants' past conduct does not entitle Plaintiff to prospective relief.  *See Schrier*, 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiff[] from irreparable injury that will surely result . . . ."); *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (holding that an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future").

I FURTHER **ORDER** that Plaintiff's Motion to Compel and Motion for Sanctions [#314] be **DENIED as moot**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this Recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel*

*of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: June 25, 2009

BY THE COURT:

___/s Kristen L. Mix_____
Kristen L. Mix
United States Magistrate Judge

## RECOMMENDATION FOR DISMISSAL:  APPENDIX A

Cases filed by Plaintiff in the District of Colorado and the Tenth Circuit Court of Appeals

(1) 06-cv-02105-WYD-PAC.  *Pro se* civil rights action against ADX Warden Ron Wiley, Agent Diana Krist and Associate Warden J.T. Shartle seeking injunctive relief and damages related to Plaintiff's alleged unsafe housing conditions at ADX.  Plaintiff voluntarily dismissed his case after the denial of his motion for preliminary injunction and while a motion to dismiss his case on the merits was pending.  The case was pending from October 23, 2006 to May 9, 2007.  During that time, Plaintiff filed approximately seventy-one motions and letters, the majority of which were denied or rejected, including approximately eight motions for injunctive relief.  He also filed at least two notices of appeal to the Tenth Circuit which did not proceed.

(2) 07-cv-00102-ZLW.  *Pro se* civil rights action against ADX Warden Ron Wiley, Unit Manager Mark Collins, Case Manager Tina Sudlow and Agent Diana Krist seeking an emergency writ of mandamus related to Plaintiff's alleged unsafe housing conditions at ADX.  The action was dismissed in preliminary review as frivolous and malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

(3) 07-cv-00121-WYD-KLM.  *Pro se* civil rights action against the United States, ADX Warden Ron Wiley and medical official Steven Nafziger seeking injunctive relief and damages related to Plaintiff's medical care.  Plaintiff voluntarily dismissed his case while a motion to dismiss, a motion for sanctions, and a recommendation to dismiss for failure to pay the filing fee were pending.  The dismissal was converted to a dismissal with prejudice pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1915(e)(2)(B)(i).  The case was pending from January 8, 2007 to June 24, 2008.  During that time, Plaintiff filed approximately forty-seven motions and letters, the majority of which were denied or rejected, including approximately five motions for injunctive relief.  He also filed at least one notice of appeal to the Tenth Circuit which did not proceed.

(4) 07-cv-00799-WYD-KLM.  *Pro se* civil rights and Federal Tort Claims action against ADX Warden Ron Wiley, medical official Steven Nafziger, Case Manager George Knox, Nurse Osagie, Officer Jenkins and Lt. Swanson seeking injunctive relief and damages related to Plaintiff's medical care and an alleged assault against him.  The tort claim was dismissed for failure to exhaust and the civil rights claims were dismissed on summary judgment following a review of the merits.  The case was pending from April 11, 2007 to September 22, 2008.  During that time, Plaintiff filed approximately forty-nine motions and letters, the majority of which were denied or rejected, including approximately nine motions for injunctive relief.  Due to Plaintiff's frivolous filings, Plaintiff was prohibited from filing motions without leave of Court.

(5) 07-cv-01248-ZLW.  *Pro se* civil rights action against ADX Warden Ron Wiley, medical official Steven Nafziger and Nurse Osagie seeking injunctive relief and damages related to Plaintiff's medical care.  Plaintiff voluntarily dismissed the case during the preliminary

review phase because of its overlap with 07-cv-00799-WYD-KLM.  The case was pending from June 4, 2007 to August 2, 2007.  During that time, Plaintiff filed nine motions and letters, all of which were denied or rejected, including three motions for injunctive relief.

(6) 07-cv-01250-WYD-KMT.  *Pro se* civil rights action against ADX Warden Ron Wiley seeking injunctive relief and damages related to regulatory and constitutional violations with respect to Plaintiff's housing at ADX.  The action was dismissed on a motion to dismiss, to which Plaintiff did not respond.  The case was pending from June 6, 2007 to September 18, 2008.  During that time, Plaintiff filed eighteen motions and letters, the majority of which were denied or rejected, including one motion for injunctive relief.

(7) 07-cv-01839-WYD-KLM.  *Pro se* civil rights action against ADX Warden Ron Wiley, BOP Director Harley Lappin and Regional Director Michael Nalley seeking injunctive relief related to the conditions of Plaintiff's confinement at ADX.  This action has been pending since August 27, 2007.  This case is discussed extensively in the text of the Recommendation.

(8) 07-cv-02203-WYD-KLM.  *Pro se* civil rights action against ADX Warden Ron Wiley and medical official Steven Nafziger seeking injunctive relief and damages related to Plaintiff's medical care.  This action has been pending since October 9, 2007.  A portion of a single claim for injunctive relief remains following adjudication of a motion to dismiss.  Since the case's filing, Plaintiff has filed approximately fifty-three motions and letters, the majority of which were denied or rejected, including approximately eleven motions for injunctive relief.  A motion to dismiss as a sanction similar to the one at issue here and involving similar conduct and pleadings is pending to which Plaintiff did not respond.

(9) 08-cv-00164-WYD-KLM.  *Pro se* civil rights action against ADX Warden Ron Wiley, BOP Director Harley Lappin and Regional Director Michael Nalley seeking injunctive relief and damages related to the conditions of Plaintiff's confinement at ADX.  This was dismissed with prejudice pursuant to the parties' stipulation of dismissal while a Recommendation to dismiss the case on its merits was pending.  The action was pending from January 16, 2008 to June 9, 2009.  During that time, Plaintiff filed approximately thirty-eight motions and letters, the majority of which were denied or rejected, including approximately ten motions for injunctive relief.  He also filed at least one notice of appeal to the Tenth Circuit which was voluntarily dismissed.

(10) 08-cv-00298-ZLW.  *Pro se* civil rights action against ADX Unit Manage Mark Collins, Case Manager Tina Sudlow and Case Manager George Knox seeking a petition for writ of mandamus related to Plaintiff's desire to converse freely with other inmates.  The action was dismissed as frivolous and malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  Plaintiff filed a notice of appeal to the Tenth Circuit, which was resolved on its merits against Plaintiff.

(11) 09-cv-00278-CMA-MEH.  *Pro se* civil rights action against ADX Warden Ron Wiley, Associate Warden J. Fox, Lt. Manley, Lt. J.D. Walters, Unit Manager Mark Collins, Case

Manager George Knox, Officer Bream, Case Manager Tina Sudlow, Officer Manspeaker, Officer Batulis, Lt. Rivers, Agent Diana Krist and USP-Marion Warden B.A. Bledsoe seeking injunctive relief and damages regarding the conditions of multiple inmates' confinement at ADX.  The action has been pending since February 10, 2009.  Since the case's filing, Plaintiff has filed approximately fifteen motions and letters, including three motions for injunctive relief which remain pending.

(12) 09-cv-00665-ZLW.  *Pro se* civil rights action against San Bernadino County Jail officials Lt. Trotter, Sgt. Florence and Sgt. Mahoney seeking injunctive relief regarding the status of Plaintiff's mail.  The action was dismissed in preliminary review because Plaintiff failed to pay his filing fee and can no longer proceed *in forma pauperis*.

(13) 09-cv-00933-BNB.  *Pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 against ADX Warden Ron Wiley seeking expungement of disciplinary conviction, damages, and attorney's fees.  The case remains in preliminary review.  In Respondents' preliminary response they argue that the petition should be dismissed for failure to exhaust.